# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHINYERE UZOUKWU,     )
                            )
        Plaintiff,     )
                            )
        vs.           )     Civil Action No.  11-cv-391 (RLW)
                            )
                            )
METROPOLITAN     )
WASHINGTON COUNCIL OF     )
GOVERNMENTS, et al.,     )
                            )
        Defendants.     )

## MEMORANDUM OPINION

Presently before the Court are the following motions:  (1) "Plaintiff's Motion for Reconsideration Pursuant to Fed. R. Civ. P. 59(e), To Set Aside/Vacate Judgment and Request for Post-Judgment Leave to Amend Claims Under Title VII, 42 U.S.C. [§] 2000e and 42 U.S.C. § 1981 Renewing Argument for Equitable Tolling"; and (2) "Motion for Relief from Judgment *nunc pro tunc*, Pursuant to Rule 60(b)(3)."  (Docs. 41, 45.)  For the reasons set forth below, the Court will deny relief in part and grant relief in part.  The Court will deny relief with respect to Plaintiff's Title VII, ADA, ADEA, and national origin claims, along with any claims alleging gender discrimination or sexual harassment.   Reluctantly, the Court will grant Plaintiff post-judgment relief and allow some of her Section 1981 claims to go forward, as well as some of her state law claims.  Specifically, Plaintiff asserts sufficient facts to support plausible claims for the following cause of action: Ethnicity based Section 1981 Retaliation and Hostile Work Environment claims asserted against Metropolitan Washington Council of Governments ("COG") and Calvin Smith; Ethnicity Based Section 1981 Retaliation claims asserted against

Paul DesJardin and Imelda Roberts; Tortious Interference with Contract claims asserted against Smith, DesJardin and Roberts for alleged interference with Plaintiff's employment at COG; and negligent supervision and/or retention as asserted against COG. The remaining claims will be dismissed.

## I. BACKGROUND FACTS

*Pro se* plaintiff Chinyere Uzoukwu is Nigerian. (Doc. 21-3, Pl.'s 1st Proposed Amend. Compl. ¶ 139.) She initiated this action with a complaint in which she asserted claims under Title VII, 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (*See* Compl. ¶¶ 1-2.) In the complaint she also mentioned the Equal Pay Act, 29 U.S.C. § 206(d), alleged invasion of privacy, and violation of the "District of Columbia Statute of bias-motivated violence or intimidation." (*See* Compl. ¶¶ 2, 51, 52.) Plaintiff brought her federal claims against her former employer, the Metropolitan Washington Council of Governments ("COG"). COG is an independent nonprofit association comprised of elected officials from twenty-one local governments, members of the Maryland and Virginia state legislatures, and members of the U.S. Congress. (*See* Doc. 2, COG Mot. to Dismiss at 2; Compl. ¶ 5.) COG terminated Plaintiff's employment in March 2008 and she claims her termination was motivated by discriminatory animus. (Compl. ¶ 14.) She also claims that she suffered retaliation and harassment during her employment at COG.

Plaintiff brought her federal and/or state law claims against eight individual defendants, seven of whom were current or former COG employees.[1] The eighth individual defendant,

---

[1] The Court will refer to both the former and current COG employees collectively as "employees" unless otherwise necessary for the sake of clarity.

Molly Keller, was an employee of MHNet, which is a behavioral health entity that provides services to COG. Plaintiff asserted claims against Keller for "tortious interference" and "bias/politically motivated violence/intimidation in violation of DC Statutes." (Doc. 26, Pl.s' Resp. to Keller's Mot to Dismiss at 4.)

In an earlier opinion, *Uzoukwu v. Metro. Wash. Council of Govts.*, 845 F. Supp. 2d 168, 171 n.3 (D.D.C. 2012), this Court dismissed with prejudice Plaintiff's Title VII, ADEA and ADA claims asserted against the individual defendants because individuals are not subject to liability under these statutes. *See Smith v. Janey,* 664 F. Supp. 2d 1, 8 (D.D.C. 2009) ("[T]here is no individual liability under Title VII, the ADEA or the ADA."), *aff'd Smith v. Rhee,* No. 09–7100, 2010 WL 1633177 (D.C. Cir. Apr. 6, 2010). The Court also dismissed with prejudice these same federal claims as asserted against COG because Plaintiff failed properly to file her complaint within 90 days after receiving her EEOC right to sue letter. *Uzoukwu*, 845 F. Supp. 2d at 170-74; *see* 42 U.S.C. § 2000e-5(f)(1) (Title VII); 29 U.S.C. § 626(e) (ADEA); 42 U.S.C. § 12117(a) (applying Title VII limitations period to ADA claims). Further, the Court found that she had not acted diligently to preserve her claims and, therefore, Plaintiff could not rely on equitable tolling to excuse her failure to file her complaint in a timely fashion.[2]

With no remaining federal claims, this Court dismissed the purported state law claims, without prejudice, as asserted against the seven individual COG defendants because Plaintiff had not set forth sufficient facts for this Court to determine whether diversity jurisdiction existed. *Uzoukwu*, 845 F. Supp. 2d at 173 n.7. The claims asserted against Keller were dismissed without prejudice because there was no evidence the Court had subject matter jurisdiction over those claims and no evidence that Keller had been properly served. *See id.*

---

[2] The Court also dismissed Plaintiff's Equal Pay Act claims without prejudice because her complaint did not contain any allegations relating to unequal pay. *Uzoukwu*, 845 F. Supp. 2d at 173 n.7.

## II.  ANALYSIS

**A.      Motion to Reconsider: Title VII, ADEA, & ADA Claims** [3]

Inasmuch as the federal employment discrimination claims were the touchstone of her complaint, the motion to reconsider hinges on the timeliness of those claims.  "A Rule 59(e) motion [for reconsideration] 'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citations omitted).[4]  Plaintiff seeks relief pursuant to Rule 59(e) because she claims she can establish clear error.  According to Plaintiff, the Court misconstrued and misunderstood the circumstances surrounding the submission and later filing of her complaint.  In her Rule 59 motion Plaintiff attempts to "clarify" the circumstances surrounding the initiation of this lawsuit.  (Doc. 41, Mot. to Reconsider at 7.)  In her view these circumstances justify equitably tolling the statute of limitations for her Title VII claims.

Plaintiff's second Rule 59(e) argument is that she is entitled to relief from the judgment because she has "new" evidence.  Finally, she seeks relief pursuant to Rule 60(b)(3) because she claims she can establish fraud.  Federal Rule of Civil Procedure 60(b)(3) allows relief from a "final judgment, order or proceeding" where the Plaintiff can establish "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."

---

[3]  For ease of reference, the Court will refer to Plaintiff's Title VII, ADEA and ADA claims collectively as "Title VII" claims unless otherwise necessary for the sake of clarity.

[4]  Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  It is undisputed that Plaintiff's motion was timely.

1.     <u>Clear Error: Equitable Tolling</u>

A Plaintiff who wishes to pursue Title VII litigation must file her lawsuit within ninety days of receiving her right to sue letter from the EEOC.  *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII); 29 U.S.C. § 626(e) (ADEA);  42 U.S.C. § 12117(a) (applying Title VII limitations period to ADA claims).   "Courts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day."  *Wiley v. Johnson*, 436 F. Supp. 2d 91, 96 (D.D.C. 2006) (citation omitted); *see Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007).

When Plaintiff submitted her complaint to the Court, on November 16, 2010, she had eight days left in which to timely file her complaint.  Attached to the complaint was an application to proceed without payment of fees (*in forma pauperis* or "IFP") in which she indicated that she was unmarried and had no dependents; she was unemployed; she owned a Mercedes Benz valued at $6,500; she lived in a residence valued between $395,000 and $430,000; and she had $20,000 in cash or in her bank accounts.  (*See Uzoukwu v. Metro. Wash. Council of Gov'ts*, 11-mc-15-UNA at Doc. 1.)

The application was denied without explanation and mailed to Plaintiff who received it on December 2, 2010.  Because the limitations period had been tolled while the Court considered her IFP application, upon receiving the IFP denial order she arguably had until December 10 (eight additional days) to timely file her complaint.[5]  *See Ruiz v. Vilsack*, 763 F. Supp. 2d 168,

---

[5]  As indicated in the original opinion,

> There is conflicting authority about whether the issuance of the IFP denial order or the plaintiff's receipt of the order ends the tolling period. *See Williams–Guice,* 45 F.3d at 164–65; *Nkengfack v. Am. Ass'n of Retired Persons,* 818 F. Supp. 2d 178, 181–82 (D.D.C. 2011) (citing cases from the instant court and *Williams– Guice,* 45 F.3d at 165). Even if the plaintiff's receipt of the order ends the tolling period, the instant court is reluctant to credit Plaintiff's unsworn claims about when she received the IFP denial order and the various documents at issue.

172-73 (D.D.C. 2011) (noting that complaints submitted with an IFP application are not "filed," but instead "received" by the Court and the ninety-day statute of limitations is tolled during the Court's review of the IFP application) (citations and internal quotations omitted).

In a sworn affidavit, Plaintiff now more fully explains what occurred between the time she received the IFP denial order and the time she filed her complaint over two months later:

> In seeking IFP, Plaintiff did not and could not have known about the concept of tolling. When the IFP denial was returned beyond the 90 days, there was no indication that Plaintiff had to act by a certain time nor that Plaintiff had any additional time in which to act. Plaintiff was in a state of confusion and believed her claim was dead, and thereafter began to research what to do. From December 7 – 10, Plaintiff began to contact legal aid . . . .
>
> As a last resort Plaintiff contacted the pro se unit of the Court on about December 13th or 14th and was informed of the process of rotation by the Judges and that she should wait and resubmit for reconsideration in the next cycle after the new year: usually the second week. Plaintiff took the counsel of the pro se unit, in that they provide counsel to litigants accorded IFP which Plaintiff was seeking to obtain.

(Doc. 41, Mot. to Reconsider at 7; *id.* at Attachment 1, Uzoukwu Aff. ¶¶ 14, 15(b), 16, 19.) [6]

On January 11, 2011, approximately forty days after she received the IFP denial order, Plaintiff filed a motion seeking reconsideration of her IFP application and asking the Court to

---

> Nonetheless, because crediting Plaintiff's claims has no negative impact on the Defendants, the court has given Plaintiff the benefit of the doubt.

*Uzoukwu*, 845 F. Supp. 2d at 172 n.5. Consistent with the unsworn assertions she made prior to dismissal, Plaintiff has now submitted an affidavit that indicates she received the IFP denial order on December 2, 2010. (Doc. 41-1, Mot. to Reconsider at Attachment 1, Uzoukwu Aff. ¶ 14.)

[6] Although Plaintiff repeatedly mentioned her alleged discussions with the Court in the briefs she filed prior to dismissal of her claims, the nature of those alleged discussions and the office with whom she communicated were not entirely clear from the voluminous submissions. (*See, e.g.*, Doc. 25, Pl.'s Opp. to Keller Mot. to Dismiss at 3 n.1.) Thus, the Court did not address these alleged communications in its prior opinion, except to note that the Clerk's Office is prohibited from giving legal advice. *See Uzoukwu*, 845 F. Supp. 2d at 173 (citing 28 U.S.C. § 955).

"Reinstate Filing and Relate the Time Back to Date Presented On November 16, 2010." (*See Uzoukwu v. Metro. Wash. Council of Gov'ts*, 11-mc-15-UNA at Doc. 1.) Attached to that motion was a copy of her November IFP application, but in the resubmission Plaintiff crossed out $20,000 and inserted $17,000 as the amount she had in cash or in her bank accounts. (*See id.*) In her motion she explained that she was still unemployed and she had discovered that her EEOC charge had not been fully investigated. (*See id.*) She also asked the Court to consider her complaint as timely filed. On February 7, 2011 Plaintiff received an order denying her motion and nine days later, on February 16, 2011, she filed her complaint (which she dated November 16, 2010) and paid the filing fee.[7]

In the prior opinion, this Court found that Plaintiff failed to set forth facts entitling her to equitable tolling of the 90 day limitations period in which a party may initiate a lawsuit after receiving an EEOC right to sue letter. *Uzoukwu*, 845 F. Supp. 2d at 172-73. Although Plaintiff's complaint was "received" by the Clerk of the Court within the requisite time period, she was inexcusably tardy with her payment of the filing fee after her application to proceed IFP was denied:

> Rather than pay the fee by December 10, or within a reasonable time thereafter, *see Williams–Guice,* 45 F.3d at 165, Plaintiff waited until January 11, 2011 to file a motion to reconsider and request permission to pay the filing fee. This motion was filed 32 days after the December 10 deadline and the motion was not accompanied by payment of the filing fee. Indeed, Plaintiff did not pay the filing fee until she filed the complaint in the instant lawsuit on February 16, 2011, which was 68 days after the December 10 deadline.

---

[7] It was unclear from the prior record when Plaintiff actually received the order denying her motion to reconsider. Thus, in making its ruling, the Court calculated the duration between the order and date she filed her complaint as sixteen days. Plaintiff now presents an affidavit indicating she received the denial order on February 7. Thus, rather than waiting sixteen days to pay the filing fee, she waited 9 days to pay the fee. This recalculation does not change the Court's decision.

The undersigned Judge did not rule on Plaintiff's IFP motions. (*See Uzoukwu v. Metro. Wash. Council of Gov'ts*, 11-mc-15-UNA.)

*Uzoukwu*, 845 F. Supp. 2d at 172. Thus, equitable tolling of her claims was not appropriate.

"The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). As our Circuit has recognized

> [t]he Supreme Court has suggested . . . that courts may properly allow tolling where "a claimant has received inadequate notice, where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, where the court has led the plaintiff to believe that she had done everything required of her, or where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction."

*Id*. (alterations omitted) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)). Moreover, in order to establish that equitable tolling is appropriate, a plaintiff must "demonstrate that [s]he acted diligently to preserve h[er] claim." *See Williams v. Court Servs. And Offender Supervision Agency for D.C.*, 840 F. Supp. 2d 192, 196 (D.D.C. 2012).

Plaintiff contends that she has met this standard. First, she pleads ignorance of the law with respect to her obligations after she received the first IFP denial order. But a *pro se* plaintiff's ignorance of the law does not provide a sufficient basis for tolling the limitations period. *See, e.g., Barrow v. New Orleans S.S. Ass'n,* 932 F.2d 473, 478 (5th Cir. 1991) (affirming dismissal of age discrimination claim where plaintiff failed to file a timely EEOC charge and noting that "lack of knowledge of applicable filing deadlines is not a basis for tolling. Neither is a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period.") (citing *James v. U.S. Postal Serv.,* 835 F.2d 1265, 1267 (8th Cir. 1988)) (some citations omitted).

Next, she appears to argue that she acted as "diligently" as possible given the "inadequate notice" she received from the Court's orders. *See Mondy*, 845 F.2d at 1057; *Williams*, 840 F.

Supp. 2d at 196. She explains that she "could not have surmised from the bare notice of the [original] IFP denial beyond the 90-day filing requirement that she had eight (8) days or until December 10 to pay the filing fee." (Doc. 41, Mot. to Reconsider at 12-13.) This argument is unconvincing because it essentially amounts to the same argument she made above: that she is ignorant of the law. As noted above, her unfamiliarity with the law does not provide sufficient legal justification to toll the limitations period.

Plaintiff also appears to argue that she acted as diligently as possible given what Plaintiff describes as the "lack of adequate notice" she received from the *Pro Se* unit. This argument also fails. The Court cannot operate by accepting, at face value, statements from litigants regarding the nature of their conversations with Court personnel. Thus, when evaluating a plaintiff's equitable tolling argument, the Court must consider the nature of the purported statement, as well as any alleged circumstances surrounding the purported communications with Court personnel.

As an initial matter, the Court, the *Pro Se* unit and the Clerk's office are prohibited from giving legal advice. *See, e.g.*, 28 U.S.C. § 955; *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 243-44 (3d Cir. 2013). Given such restrictions, Plaintiff's credibility with regard to her purported conversation is seriously undermined. Additionally, the information she claims to have received from the *Pro Se* unit is illogical. Essentially Plaintiff claims she was told that she had a chance of obtaining approval for her IFP application simply by "resubmitting" it to a different judge. But it defies common sense to expect that resubmission of the same financial information, with no material differences, will garner a different result simply because a different judge will review the application several weeks later.

Thus, Plaintiff failed to act diligently. While she may not have known about the concept of equitable tolling, she could have paid the filing fee along with her motion for reconsideration,

in which she asked the Court to "reinstate" her complaint back to the November date. Instead, she elected to submit, along with her motion, essentially the same IFP application as was previously denied.[8] Given Plaintiff's training as a paralegal, (Doc. 27 at ECF p. 7), her familiarity with court rules and court filings,[9] as well as her substantial financial resources, Plaintiff's purported reliance on reconsideration of her IFP application was not reasonable.

Indeed, there is a strong argument that she could not have reasonably believed she was eligible for IFP status when she submitted her <u>first</u> IFP application because the application requires a declaration that the applicant "is <u>unable</u> to pay" the $350 needed to initiate a lawsuit. (*See* Govt. Form AO 240)(Rev. 07/10) (emphasis added). Given the several thousand dollars of cash she had at her disposal, Plaintiff was most certainly able to pay the $350 filing fee. Thus, once the first IFP application was denied, she should have been more proactive.[10] Finally, allowing Plaintiff's resubmitted IFP application to toll the limitations period under these circumstances would only encourage litigants to strategically resubmit additional frivolous IFP applications or motions to reconsider in an effort to further toll the limitations period.

---

[8] Plaintiff's explanation that she "believed the fact that the EEOC did not investigate her retaliation claim was new material to support her cause for [resubmitting her] IFP" application is not credible. (*See* Doc. 41, Mot. to Reconsider at 8.)

[9] In addition to the present case, Plaintiff has filed at least two additional *pro se* actions in federal court and at least two in state court, including an employment discrimination action against a prior employer. *See Uzoukwu v. Robinson*, 8:12-cv-3228-DKC (D. Md.); *Uzoukwu v. Prince George's Community College*, 8:12-cv-2199-JFM (D. Md.); *Uzoukwu v. AMEX Int'l Inc.*, Civil Action No. 2011 CA 004405 B (District of Columbia Superior Court); Doc. 45, Pl's Rule 60(b) Mot. at 9 n.3.

[10] It is worth noting that, in documents she filed prior to dismissal of her lawsuit, Plaintiff admitted that she did not pay the filing fee when she delivered her complaint to the Court because she was "unemployed at the time, and struggling with her mortgage; utilities; other expenses; and seeking to prevent efforts by some actors in [another lawsuit] to defraud her of her property; in addition to anticipating additional legal costs and expenses for the present action." (Doc. 33, Pl's Consolidated Response at 3.) Such reasons do not equate to an inability to pay the fee.

These facts taken together persuade the Court that Plaintiff has failed to establish that she "received inadequate notice," about her rights or that the "court . . . led the plaintiff to believe that she had done everything required of her." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (discussing justifications for equitable tolling) (citations omitted). "To merit equitable tolling, [plaintiff] must also show that extraordinary circumstances prevented her from meeting her filing deadlines. Equitable tolling is meant to ensure that the plaintiff is not, by dint of circumstances beyond [her] control, deprived of a reasonable time in which to file suit." *Dyson v. D.C.*, 710 F.3d 415, 422 (D.C. Cir. 2013) (citation, internal quotations and alterations omitted). Here the circumstances were completely in Plaintiff's control and equitable tolling is not appropriate. For these same reasons, Plaintiff has failed to establish "clear error" pursuant to Rule 59(e) and her motion will be denied with respect to her Title VII claims.

2.     "New" Evidence & Allegations of Fraud

Next Plaintiff argues she is entitled to relief from dismissal of her Title VII claims, pursuant to Rule 59(e), because she has "new evidence" and she is entitled to relief, pursuant to Rule 60(b)(3), because she claims she can establish fraud. Plaintiff's arguments center around mental health authorizations of release that were attached to an exhibit filed by defendants Keller and MHNet, an entity that provides COG with mental health services. (*See* Doc. 46, Keller Opp. to Rule 60(b)(3) Mot. at Exs. 1, 2.)

Although Plaintiff's arguments are nearly impossible to follow, she appears to allege that one of her former supervisors, defendant Calvin L. Smith, was involved in a "false and fabricated mandatory" counseling scheme, whereby Smith required that she participate in counseling or face termination. (*See* Doc. 41-2, Mot. to Reconsider at Ex. 1; Proposed Amend. Compl. ¶¶ 77,

109.) [11] Smith referred Plaintiff to MHNet for mental health counseling and MHNet put Plaintiff in contact with defendant Molly Keller, who is the Lead EAP Management Consultant for the company. (Doc. 23-1, Keller Mot. to Dismiss at 7.) Specifically, Keller's job involves linking persons who need behavioral health care support with providers of those services. (*Id*.) According to Keller, as part of the referral process, Plaintiff completed a standard consent form authorizing release of confidential information which allowed MHNet to make disclosures to COG. (*See id*; Doc. 46, Keller Opp. to Rule 60(b)(3) Mot. at 2, 6 n.2.)

In Plaintiff's Rule 59 motion, she claimed that she was not in need of mental health counseling and she emphatically insisted that she did not sign the forms. (Doc. 41, Mot. to Reconsider at 14; Doc. 44, Pl.'s Mot. to Reconsider Reply at 12) ("Plaintiff maintains she did not sign any such form, regardless of counsels [sic] representation.") According to Plaintiff, she did not know the forms existed until after the present action was dismissed. (Doc. 41, Mot. to Reconsider at 14.) Apparently, pursuant to Local Rule 7(m), Plaintiff notified Defendants that she intended to file the present Motion to Reconsider and, in the process of exchanging emails over the matter, Keller's attorney sent Plaintiff a copy of the releases. (Doc. 46, Keller Opp. to Rule 60(b) Mot. at 4; *id*. at Exs. 3-6.) Inasmuch as she was purportedly unaware of the releases until after dismissal of this action, Plaintiff claims the releases constitute "new evidence," thereby justifying Rule 59 relief from the final judgment dismissing her Title VII claims.

Later, in her Rule 60(b) filing, Plaintiff raised claims of fraud and changed her story regarding her knowledge of the releases. First, she claimed that Keller's attorney, Jesse Stein, altered the releases prior to filing them as exhibits in response to her Rule 59 motion. (Doc. 45,

---

[11] Calvin L. Smith, Sr., who is African-American, was COG's Director of Human Services Planning and Public Safety, as well as one of Plaintiff's two supervisors. (Amend. Compl. § 11, 25.)

Pl.'s Rule 60(b) Mot. at 5, 8, 13.)  Plaintiff does not explain how the documents may have been altered, but she asserts that Stein filed the releases with malice and for improper purposes.  (*Id.* at 13.)  Additionally, Plaintiff claims she was publicly stigmatized when the mental health releases were filed on the open docket.  (*See id.*; Doc. 25, Pl.'s Opp. to Keller Mot. to Dismiss at 7.)

Plaintiff also claims that she was prejudiced in her attempts to prosecute her lawsuit because COG and MHNet intentionally withheld the releases from her prior to dismissal of her lawsuit.  (Doc. 45, Pl.'s Rule 60(b) Mot. at 5; Doc. 48, Pl.'s Rule 60(b) Reply at 12, 17-18.)  She claims these documents were in her employment file and that COG fraudulently withheld the documents from her despite her efforts to obtain access to her file.  (Doc. 45, Pl's Rule 60(b) Mot. at 6-7, 15.)

Finally, she contradicts the statements in an earlier motion by admitting she was aware of the forms prior to dismissal of this action.  Plaintiff now claims she

> stated she never signed and submitted any documents to Molly Keller and MHNet . . . because Plaintiff was forced and coerced to sign and submit documents, Releases, among other documents she was given to sign . . . and copies of those documents were never provided to Plaintiff . . . .
>
> Plaintiff maintains the Releases are fraudulent because they were obtained through deception and fraud without full disclosure.

(Doc. 48, Pl.'s Rule 60(b) Reply at 16, 8.)

This coercion she appears to blame on an alleged fraudulent scheme involving a host of characters.  According to Plaintiff, Smith's purpose in referring her to Keller was twofold.  First, the referral was partially motivated by discriminatory animus.  (*See* Doc. 41-2, Mot. to Reconsider at Ex. 1, Proposed Amend. Compl. ¶¶ 77, 103, 109.)  Second, Plaintiff claims Smith's goal was to label Plaintiff as having mental health issues so that he could obtain control over her personal affairs and obtain control over her family's real property.  (Doc. 45, Pl.'s Rule

60(b) Mot. at 8, 16; Doc. 48, Pl.'s Rule 60(b) Reply at 2, 4, 14.) According to Plaintiff, Smith

engaged in this scheme along with one of Plaintiff's former employers, Harold J. Gist, whom

Plaintiff previously sued and whom Plaintiff claims tried to involve her in an alleged attempt to

embezzle money from the Democratic National Committee. (Doc. 45, Pl.'s Rule 60(b) Mot. at 9

n.3; Doc. 48, Pl.'s Rule 60(b) Reply at 13, 16.)[12] Plaintiff claims the alleged scheme involving

Smith and Gist is, at least in part, politically motivated and that it involved Smith employing her

at COG in a "fraudulent position." (Doc. 45, Pl.'s Rule 60(b) Mot. at 9 n.3; Doc. 48, Pl.'s Rule

60(b) Reply at 8, 16.)

Although newly discovered evidence that was previously unavailable may justify Rule

59(e) relief, Plaintiff has not established discovery of any new evidence. She admits she signed

the releases, albeit under alleged coercion. Thus, she was aware that the documents existed prior

to dismissal of her claims.

To the extent Plaintiff argues that she satisfies Rule 59(e)'s "new evidence" standard

because copies of the documents were unavailable prior to dismissal of her claims, her argument

is unpersuasive. Plaintiff has pointed to no reason why this "new" evidence should change the

Court's decision with respect to dismissal of her Title VII claims: the documents do not relate to

the filing of her IFP motions or the timeliness of her complaint. Thus, Rule 59(e) relief is not

available.

With respect to her Rule 60(b)(3) motion, Plaintiff may only obtain relief if she can

establish fraud by clear and convincing evidence. *See Shepherd v. Am. Broad. Cos., Inc.*, 62

F.3d 1469, 1477 (D.C. Cir. 1995) (citations omitted). Even where a Plaintiff can meet this

standard, the Plaintiff must also establish that the fraud "prevented [her] from fully and fairly

---

[12] Prior to her employment at COG, Plaintiff apparently sued Gist for, *inter alia*, sexual
harassment, discrimination, and fraud.

presenting [her] case." 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, Wright & Miller § 2852 (3d ed.) (hereinafter "Wright & Miller").

Plaintiff cannot meet these requirements. First, because she relies solely on unsubstantiated allegations she has not presented even a scintilla of evidence, let alone clear and convincing evidence, of fraud. Indeed, with respect to her claim that Keller's attorney altered an exhibit, Plaintiff failed to point out the nature of the alleged alteration. Second, even if one were to believe that Smith, Gist, COG, Keller and Stein were involved in this fantastical scheme, Plaintiff fails to show how this alleged fraud saves her untimely Title VII claims. Her allegation that she was unable to properly prosecute her Title VII claims prior to the disclosure of the releases is unfounded because nothing about the releases changes the circumstances surrounding the filing of her IFP motions or her payment of the filing fee.

Thus, Plaintiff is not entitled to relief pursuant to either Rule 59 or 60. She simply does not have "new" evidence, nor does she have "clear and convincing" evidence of fraud that prevented her from "fully and fairly presenting her case." *See* Wright & Miller, 11 Fed. Prac. & Proc. § 2852. As such, her motions for relief from judgment will be denied with respect to her Title VII, ADA, and ADEA claims.[13]

**B.** **Section 1981 Claims & Plaintiff's Motion to Amend the Complaint**

Unlike Title VII claims, a plaintiff's ability to bring a 42 U.S.C. § 1981 employment discrimination claim is not tied to receipt of the EEOC right to sue letter. Thus, Plaintiff argues

---

[13] Plaintiff also claims that Stein engaged in unethical behavior and misconduct by filing the releases on the Court's public docket. However, Plaintiff has proffered no evidence to substantiate such serious and potentially damaging allegations, particularly where the releases do not contain any private or health related information. (*See* Doc. 46, Keller Opp. to Rule 60(b)(3) Mot. at Exs. 1-2.) Similarly, her allegations that Defendants improperly withheld the documents from her are without merit inasmuch Defendants had no duty to disclose the documents prior to discovery.

that the timeliness problems that plagued her Title VII claims did not prevent her from asserting claims under Section 1981. *See Hamilton v. D.C.*, 852 F. Supp. 2d 139, 144 (D.D.C. 2012) (four year statute of limitations) (citing 28 U.S.C. § 1658); *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382–83 (2004)). She asserts that she raised the Section 1981 claim in her complaint and she cites to page two of her complaint in support of this assertion. (Doc. 41, Pl.'s Mot. to Reconsider at 3, 15–16.)

However, a review of her complaint shows she only cited Title VII, 42 U.S.C. 2000e, in her complaint. After COG noted this deficiency in its reply to the current motion, Plaintiff responded by essentially admitting that she did not explicitly raise Section 1981 claims in her complaint. (Doc. 44, Pl.'s Mot. to Reconsider Reply at 2.) She went on to argue, however, that such claims were implied based on her allegations regarding individual liability for retaliation and she noted that she did raise Section 1981 claims in her proposed amended complaints. (*See* Doc. 44, Pl.'s Mot. to Reconsider Reply at 1, 2-3, 6; Doc. 45, Pl.'s Rule 60(b) Mot. at p. 4 n.1.)

Once this Court dismissed Plaintiff's complaint with prejudice, she "could amend [her] complaint only by filing . . . a 59(e) motion to alter or amend a judgment combined with a Rule 15(a) motion requesting leave of court to amend their complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citations omitted). "[T]he validity of the latter order rests partly on the propriety of the first. [As noted above, a] Rule 59(e) motion 'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Firestone*, 76 F.3d at 1208. If the Rule 59(e) standard is met, then the less stringent Rule 15(a) standard comes into play: leave to amend a complaint under Rule 15(a) "shall be freely given when justice so requires." *See id.* (citations omitted).

With respect to the Rule 59 standard, the Court finds that Plaintiff is entitled to post-judgment consideration regarding the viability of her Section 1981 claims. While Plaintiff's complaint did not contain any references to Section 1981, she did file several motions to amend her complaint and attached several proposed amended complaints, some of which specifically included Section 1981 claims. (*See* Doc. 21-3, Doc. 26-2.) Because Plaintiff never pointed out to the Court that she sought to add Section 1981 claims, the Court did not reach the issue of whether she should be allowed to amend her claims. Thus, in order to prevent "manifest injustice," the Court must now consider Plaintiff's motions to amend. *See Firestone*, 76 F.3d at 1208.

"Rule 15(a) provides that if a defendant files a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the plaintiff may amend the complaint as a matter of course within 21 days of service of the motion to dismiss. That aspect of Rule 15(a) ensures, among other things, that the plaintiff has an opportunity to amend a complaint so as to avoid dismissal based on a technicality or readily corrected error that the defendant has identified." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (J. Kavanaugh, concurring). Only eight days after COG's motion to dismiss, Plaintiff met this twenty-one day deadline by filing her response to COG's motion, combined with a motion to amend her complaint. (*See* Docs. 2-3.) However, in so doing she failed to comply with the rules of the Court. Specifically, she failed to attach a copy of her proposed amended complaint as required by the Local Rules. *See* LCvR 7(i) & 15.1 ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended. . . .").[14] She also failed to explain the basis for her motion to

---

[14]   Additionally, Plaintiff failed to confer with opposing counsel prior to filing the motion, failed to include in her motion a statement that she had conferred with opposing counsel, and failed to include a statement indicating whether the motion was opposed. *See* LCvR 7(m).

amend; indeed she did not discuss amendment of the complaint in her brief. Thus, Plaintiff lost

her ability to amend as of right. *See Rollins*, 703 F.3d at 130 (upholding denial of a motion to

amend where plaintiff failed to include a proposed amended complaint and noting that "a bare

request in an opposition to a motion to dismiss—without any indication of the particular grounds

on which amendment is sought—does not constitute a motion within the contemplation of Rule

15(a)") (citation omitted).

Even where amendment as of right is foreclosed, the District Court has discretion to

grant leave for a plaintiff to amend and Rule 15 provides that leave to amend "shall be freely

given when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, it is an abuse of discretion to

deny leave to amend without a sufficient reason such as "undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or]

futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Firestone*, 76 F.3d at

1208 (citations omitted). The non-movant generally carries the burden of persuading the court to

deny the motion. *Dove v. Wash. Metro. Area Transit Auth.*, 221 F.R.D. 246, 247 (D.D.C. 2004)

(citation omitted). In opposing the motion, COG argues there is no basis for allowing post-

judgment relief pursuant to Rule 59(e) and they point to Plaintiff's numerous proposed

amendments.

With reluctance, the Court finds that COG has not met its burden. The Court's reluctance

is due to Plaintiff's failure to comply with the local rules of this Court and her failure to alert

both the Court and COG that she was asserting new claims in her proposed amended complaints.

Plaintiff's failure in this regard was compounded by her voluminous filings in which she

mostly repeated her equitable tolling arguments, repeated her factual assertions and raised

entirely new factual assertions, some of which had nothing whatsoever to do with her employment at COG.[15] After Plaintiff's failed attempt to amend her complaint as of right, she filed a repetitious "motion to reinstate" her claims, followed by a repetitious sur-reply to COG's motion to dismiss - - both of which mostly rehashed the arguments she had previously raised in her original response. However, the sur-reply included another motion to amend her complaint. (Doc. 21.) While she did attach a proposed amended complaint, it was twenty-eight pages long, contained 160 paragraphs and she failed to file "an original of the proposed pleading as amended." *See* LCvR 7(i). Moreover, although she cited to Section 1981 in the proposed complaint, she did not cite to Section 1981 in her motion and her only explanation for seeking the amendment was that she had "obtained information and documents . . . which support[ed] an amended complaint. (Doc. 21, Br. at 15.) Thus, again neither the Defendants nor the Court were sufficiently put on notice that Plaintiff sought to add Section 1981 claims.

Plaintiff proceeded to file four additional voluminous pleadings, each containing motions to amend in which she either failed to state the reasons for seeking the amendment or stated that the proposed amended complaint did <u>not</u> add any additional claims.[16] Although she attached

---

[15] Prior to dismissal, Plaintiff filed ten briefs totaling 110 pages, accompanied by 276 pages of attached exhibits and proposed amended complaints.

[16] *See* Docs. 25/26 Plaintiff's Opposition to Defendant Molly Keller's Rule 12(b)(2), 12(b)(5), and 12(b)(6) Motion to Dismiss and in the Alternative Request for Leave to Amend Complaint"; Doc. 27, "Plaintiffs' [sic] Opposition, On the Grounds of Manifest Injustice, to Defendants [sic] Rule 12(f) Motion to Strike Plaintiff's Surreply and Amended Complaint, and by Extension Dismiss Plaintiff's Pleadings & In the Alternative Request for Leave to Amend Complaint" at 2, 11, 17-18;  Doc. 30, "Motion for Notice and Leave to Transfer (Change of Venue) Pursuant to U.S.C. 28 § 1404(a) of an Action in the Superior Court for the District of Columbia CA No. 2011-04405-B to the U.S. District Court for the District of Columbia, Pursuant to Supplemental Jurisdiction, U.S.C. 28 § 1367(a) and in the Alternative, Request for Leave to Join and/or Amend";  Doc. 34, "Plaintiff's Notice of Filing an Opposition and Request for Leave to Amend an Action in the Superior Court for the District of Columbia CA No. 2011 – 0-44-5 – B (the Superior Court Action") Pending Request for Supplemental Jurisdiction, U.S.C. 28 § 1367(a)."

amended complaints to the four motions, she failed to include "an original of the proposed

pleading as amended."  *See* LCvR 7(i).  Additionally, taken together the four amended

complaints totaled approximately 164 pages, contained approximately 877 paragraphs, and

included additional defendants and claims totally unrelated to the employment dispute.  While

some of the proposed amended complaints did contain Section 1981 claims, Plaintiff did not

indicate in any of her motions to amend that she sought to add these claims.

It was not until she filed a motion for appointment of counsel, along with a motion to

amend, that she actually mentioned Section 1981 in the body of a motion.  (*See* Doc. 35,

"Plaintiff's Motion and Memorandum in Support for Appointment of Counsel, Joinder of

Additional Defendants and Request for Leave to File and Serve the Third (3rd) Amendment [sic]

Complaint" at 1.)  But she did not indicate she was asserting a new claim and did not argue that

dismissal of such a claim on the basis of untimeliness was inappropriate.

Despite these failures, the Court is mindful that leave to amend should be "freely give[n]"

and the circumstances here support liberal leave to amend.  *See* Fed. R. Civ. P. 15(a)(2).  First,

here there are no "repeated failure[s] to cure deficiencies by previous amendments," *Firestone*,

76 F.3d at 1208, because Section 1981 claims were already included in Plaintiff's prior proposed

amended complaints.

Second, while Plaintiff's filings were excessive, there is no evidence that she acted with

"bad faith," "dilatory motive" or for the purpose of causing "undue delay."  *See id*.  Indeed, any

delay has not inured to Plaintiff's benefit.  Moreover, in this Circuit undue delay alone is not a

sufficient reason to deny a motion to amend.  *Atchinson v. D. C.*, 73 F.3d 418, 426 (D.C. Cir.

1996) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).  Instead, courts should consider the

extent to which an undue delay has caused "prejudice to the opposing party."  *Atchinson*, 73 F.3d

at 426 (citation omitted).   When undertaking this consideration, the Court should "consider the position of both parties and the effect the request [to amend] will have on them.  This entails an inquiry into the hardship on the moving party if leave to amend is denied.  . ." and any potential undue prejudice to the non-moving party. Wright & Miller, 6 Fed. Prac, & Proc. § 1487, 716-17.

Finally, undue prejudice occurs not simply because the amendment will cause harm to the non-movant: "[i]ndeed <u>any</u> amendment designed to strengthen the other side's case will in some way harm the opponent." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, Civ. A. No. 82-0220, 1988 WL 122568, at *4 n.16 (D.D.C. Nov. 8, 1998) (emphasis in original), *aff'd in relevant part*, 905 F.2d 438 (D.C. Cir. 1990).  Rather, "the opposing party 'must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'"  *Foremost*, 1988 WL 122568, at *4 (citations and internal quotations omitted).   In other words, the non-movant "must demonstrate unfairness in a procedural or timing sense—that at this stage of the litigation they are prevented in some way from asserting an [sic] response to the amendment that they otherwise would have used had the amendment been timely." *Id.* (citations omitted); *In re Vitamins Antitrust Litg.*, 217 F.R.D. 36, 34 (D.D.C. 2003) ("In essence, to show prejudice, the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding.").

Here, Defendants have not met this standard for establishing undue prejudice.  This is not a case where the party seeking to amend had "sufficient opportunity to state the amended claim[] and failed to do so."  *See Robinson v. District of Columbia*, 283 F.R.D. 4, 7 (D.D.C. 2012) (denying leave to amend complaint where, *inter alia*, plaintiff was aware of the facts that gave rise to her Section 1983 claim at the time she filed the complaint, but inexplicitly sought leave to amend three years and nine months later) (citations and internal quotations omitted); Wright &

Miller, 6 Fed. Prac, & Proc. § 1487, 643-45. Neither is this a case where Plaintiff sought to amend near the end of discovery, after discovery closed, around the time of the pretrial conference or during trial. *See* Wright & Miller, 6 Fed. Prac, & Proc. § 1487, 643-45 ("[C]ourts have allowed amendments when it was established that doing so would not unduly increase discovery or delay the trial, and when the opponent could not claim surprise.") Additionally, this is not a case where Plaintiff's Section 1981 claims are wholly unrelated to the allegations asserted in the original complaint. *See Mississippi Ass'n of Coops. v. Farmer Home Admin.*, 139 F.R.D. 542, 545 (D.D.C. 1991) (denying motion to amend complaint because the proposed "claims ha[d] no relationship to the original suit, and amendment of the complaint in this regard would radically shift the scope and nature of the litigation").

In contrast to the lack of prejudice to Defendants, it appears that Plaintiff will be prejudiced if she is not allowed to amend her complaint. The Court notes that because Plaintiff never raised her Section 1981 claims in her original complaint, she could have filed a new lawsuit asserting those claims rather than seek leave to amend. However, it appears to the Court that this course of action is no longer available because Plaintiff's Section 1981 claims would be untimely if filed independently at this juncture**.** [17] But to Plaintiff's credit, the present motion to amend was pending at the time the statute ran on her Section 1981 claims and, therefore, she cannot necessarily be faulted for failing to have filed a new lawsuit. *See Mayerson v. Wash. Mfg. Co.*, 58 F.R.D. 377, 381 (E.D. Pa. 1972) (granting motion to amend complaint where plaintiff filed motion within the limitations period instead of filing a new lawsuit and where at the time the court considered the motion the limitations period had run).

---

[17] Plaintiff was terminated in March 2008. Thus, a new lawsuit raising Section 1981 claims had to be filed by March 2012 (*i.e.*, within four years). As such, her Section 1981 claim would be untimely were she to file a new lawsuit.

Finally, the Court finds that our Circuit's expressions of concern over potentially expired statutes of limitation in *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004), weigh heavily in favor of allowing the Plaintiff here to amend. *Ciralsky* involved a plaintiff whose 119 page, 367 paragraph long complaint was challenged via motion to strike. *Id*. at 665. The District Court granted the motion because the complaint did not contain "a short and plain statement of the claim" as required under Rule 8(a). *Id*. at 664-65. Although the plaintiff amended the complaint, it was 61 pages long and contained 105 paragraphs as amended, thereby failing to comply with the District Court's order to eliminate the excess. *Id*. at 665. In response, Defendants moved to dismiss the amended complaint and the District Court granted the motion, without prejudice, but warned the Plaintiff that any further amendments which failed to comply with Rule 8 would be dismissed with prejudice. *Id*.

Shortly thereafter, Plaintiff filed Rule 59(e) and Rule 15(a) motions explaining that he would be unfairly prejudiced if not allowed to amend because the statute of limitations "may be deemed to have run on some of his claims if not allowed to proceed." *Id*. Plaintiff attached an amended complaint but did not spell out which, if any, claims were time barred. *See id*. Denying the Rule 59 motion and finding the Rule 15 motion moot, the District Court noted that Plaintiff had failed to alert the Court to the possible time bar prior to its ruling on the motion to dismiss and, therefore, he had failed to show manifest injustice. *Id*.

Although the Circuit found no abuse of discretion, it was "nonetheless troubled by the fact that an affirmance of [the District Court's] Rule 59(e) disposition would terminate th[e] lawsuit, not because of the invalidity of [plaintiff's] claims, but because the plaintiff's attorneys failed to satisfy Rule 8(a) or to advise the court of the consequences of a dismissal." *Id*. at 673-74. "[O]ther things being equal," noted the Circuit, our "'jurisprudential preference is for

adjudication of cases on their merits rather than on the basis of formalities.'" *Id*. at 674 (citing Wright & Miller, 5 Fed. Prac, & Proc. Civ. § 1217, 178 (2d ed. 1990) (alterations and some citations omitted). Because it was unclear whether the District Court would have reached a different result had it been informed of the "precise nature of plaintiff's statute of limitations problem," the Circuit remanded the case in order "to allow [the Judge] to decide whether, given the surfacing of the statute of limitations problem, he wishe[d] to give plaintiff a further chance by allowing the . . . action to proceed." *Ciralsky*, 355 F.3d at 674. (citations and internal quotations omitted). Nonetheless, the Circuit stressed that it was not "dictating any particular result" by remanding the case and noted that the District Court was free to "confirm the 'death knell' of [the] action or else allow the case to proceed." *Id*. (alterations omitted).

While *Ciralsky* does not mandate a decision either for or against the Plaintiff here, the undersigned notes that despite representation by counsel in *Ciralsky*, the Circuit was still quite concerned that Plaintiff's claims might be foreclosed if he were not allowed to amend his complaint. In the present case, we have a *pro se* Plaintiff. Thus, there is even more reason for concern here than there was in *Ciralsky*. Although here Plaintiff clearly has knowledge of court proceedings and substantive laws regarding civil procedure and employment discrimination, she is not a trained lawyer. This fact, coupled with our Circuit's "jurisprudential preference . . . for adjudication of cases on their merits rather than on the basis of formalities," counsels in favor of allowing the amendment. *Id*. at 674 (citation and internal quotations omitted). As the Circuit noted, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* (citation omitted). Accordingly, because there is no apparent prejudice to Defendants, the Court will not allow a few missteps by

a *pro se* party to determine the outcome of this litigation. This result is consistent with the disposition of *Ciralsky* on remand where the District Court granted the Plaintiff's motion to amend his complaint, noting no prejudice to the Defendant where the parties had not begun discovery. *Ciralsky v. CIA*, No. 00-1709, Doc. 43, Mem. Op. at 4 (D.D.C. June 9, 2004); *see Chrysler Corp. v. Fedders Corp.*, 540 F. Supp. 706, 715-16 (S.D.N.Y. 1982) (noting that a trial court might be unwarranted in denying leave to amend "if the pleader would lose its claim unless it is added to the present suit"). Thus, Plaintiff's motion to amend will be granted with respect to her Section 1981 claims.

## C.     **Plaintiff's "Post-Judgment Amended Complaint"**

Notwithstanding the decision to grant Plaintiff's motion to amend, the Court notes that her "Post-Judgment Amended Complaint," (Doc. 41-2), contains many confusing, as well as apparently inconsistent and implausible allegations. Despite these challenges, *pro se* pleadings must be liberally construed, as they are held to "less stringent standards than formal pleadings drafted by trained lawyers." *Budik v. Dartmouth-Hitchcock Med. Ctr.*, Civil Action No. 12–329 (RBW), ---- F. Supp. 2d ----, 2013 WL 1386211, at *4 (D.D.C. April 5, 2013) (citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). Given this liberal standard, the Court will parse Plaintiff's proposed complaint, count-by-count, in order to determine which counts and allegations would survive a Rule 12 motion to dismiss. *See Bowie v. Gonzales*, Civil Action No. 03-948 (RCL), 2006 WL 1319549, at *2 (D.D.C. May 4, 2006) (citations omitted) ("The court may deny a motion to amend as futile if the proposed claim would not survive a motion to dismiss."). Although some of Plaintiff's allegations are difficult to believe, "[a] court considering a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff and must

accept as true all reasonable factual inferences drawn from well-pleaded factual allegations."

*See Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 65 (D.D.C. 2012) (citation omitted).


      1.      <u>Gender Claims</u>

Because Plaintiff's gender claims are not cognizable under Section 1981, Plaintiff's

"sexual harassment" claims will be dismissed with prejudice.   *See Bello v. Howard Univ.*, 898 F.

Supp. 2d 213, 219 (D.D.C. 2012) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)).


      2.      <u>National Origin Claims</u>

Because Section 1981 does not protect against discrimination based solely upon one's

"place or nation of . . . origin," Plaintiff's national origin claims will be dismissed with prejudice.

*See Chowdhury v. Hilton Hotels Corp.*, Civil Action No. 08–cv–2250 (RLW), 2011 WL

3742721, at *2 (D.D.C. August 25, 2011) (citing *Saint Francis College v. Al–Khazraji,* 481 U.S.

604, 613 (1987)).


      3.      <u>Count I</u>:      <u>"Sexual Harassment/Hostile Work Environment Based on Ethnicity/National Origin in violation of 42 U.S.C. § 1981 Calvin L. Smith, Sr."</u>

               <u>Count II</u>:      <u>"Retaliation Based on Ethnicity/National Origin Violation of 42 U.S.C. § 1981 Calvin L. Smith, Sr."</u>


          a.      **Ethnicity**

               i.      Hostile Work Environment

Plaintiff's ethnic origin claims as asserted against Smith may go forward.

While on the one hand she asserts that some of Smith's alleged conduct occurred after she

"proved non-responsive," presumably to his purported sexual advances, (*see* Amend. Compl. ¶

103), Plaintiff also alleges that "similarly situated employees not of Plaintiff's ethnicity . . . were not subject to the same conditions of employment as Plaintiff." (*See id.* ¶¶ 104, 110.)[18] Specifically, Plaintiff asserts that Smith harassed and/or retaliated against her based on her ethnicity by denying her work opportunities, subjecting her to "events and incidents that disrupted her ability to work," accusing her of inappropriate work conduct, isolating and ostracizing her, alleging she was homeless, alleging that she was an undocumented immigrant, subjecting her to a "false and fabricated mediatory EAP process under the threat of termination," and terminating her. (*See* Amend. Compl. ¶¶ 104, 109-10, 113, 136, 140.) Therefore, Plaintiff has set forth sufficient facts to support a viable Section 1981 hostile work environment claim based on ethnicity. *See Chowdhury v. Hilton Hotels Corp.*, Civil Action No. 08–cv–2250 (RLW), 2011 WL 3742721, at *2 (D.D.C. August 25, 2011) (noting that claims based on "ancestry or ethnic characteristics" are actionable under Section 1981) (citing *Runyon v. McCray*, 427 U.S. 160, 167 (1976)).

ii.     Retaliation

With respect to her retaliation claims, Plaintiff alleges that she "initiated discussions" with her EEO representative, but later terminated them after "she discovered the supposedly 'confidential' conversations with the EEO rep . . . were relayed back to [co-supervisor] DesJardin" [19] and "with her Introductory Appraisal, she would be terminated or placed on an extended probation." (Amend. Compl. ¶ 52.) Plaintiff also claims she later "inquired into the

---

[18] The proposed Amended Complaint, which is currently at issue, can be found in the record attached to Plaintiff's Motion for Reconsideration. (*See* Doc. 41-1.) The Court will cite to that proposed complaint as follows: "Amend. Compl."

[19] Paul DesJardin, who is Caucasian, was COG's Chief of Housing and Planning, as well as one of Plaintiff's supervisors. (Amend. Compl. ¶¶ 12, 24.)

internal/external EEO grievance process again," but "after having her inquiry mischaracterized and the continued incidents of bullying and intimidation intensifying," she "aborted this second attempt." (Amend. Compl. ¶ 65.)

These allegations are sufficient to support a plausible retaliation claim under Section 1981. *See Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006) (outling the prima facie case for retaliation claims); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) (involving hostile work environment and retaliation claims under Section 1981). The Court is not persuaded by COG's argument that Plaintiff did not engage in protected activity. (*See* Doc. 19, COG SJ Resp. at 4-5.) Both formal and informal complaints of discrimination have been recognized as "protected activity" for purposes of allowing a retaliation claim to go forward on a dispositive motion. *See Brooks v. Clinton*. 841 F. Supp. 2d 287, 304 (D.D.C. 2012) (citations omitted). Further, Plaintiff essentially alleges that her efforts to engage in protected activity were sabotaged by her employer. Given these allegations, Plaintiff has set forth sufficient facts to state a claim for relief and dismissal is not appropriate at this stage of litigation.

b.        **Section 1981 claims asserted by at-will employees**

Although Plaintiff does not indicate whether or not she was an at-will employee, her status as such does not foreclose her Section 1981 claims. *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky,* 59 F. Supp. 2d 27, 31-32 (D.D.C. 1999) (allowing at-will employee to pursue claims under Section 1981 because D.C. law treats at-will employment "as a species of contract"); *Kennedy v. D.C. Gov't*, 519 F. Supp. 2d 50, 59-61 (D.D.C. 2007) (allowing employee without a contract to proceed under Section 1981 and noting observations by other courts that a contract existed where the plaintiff's "promise to perform work for the defendant,"

constituted "consideration for the defendant's promise to pay" the plaintiff) (citation, internal quotations and alterations omitted).

### c. Section 1981 claims asserted against individual defendants

Unlike Title VII claims, Plaintiff may bring her Section 1981 claim against Smith individually. *See Tnaib v. Document Techs., LLC*, 450 F. Supp. 2d 87, 92 (D.D.C. 2006) (finding that individuals with supervisory authority may be held liable under Section 1981, but not co-workers); *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863 (N.D. Tex. 2008) ("An employee who exercises control over the plaintiff with respect to an employment decision may be individually liable if the employee was 'essentially the same' as the employer in exercising this authority."); *but see Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 338 (5th Cir. 2003) (noting "a tension between [two Section 1981] decisions . . . with respect to the liability of individual defendants who are not party to the employment contract"). [20]

4. <u>Count III</u>: <u>"Calvin L. Smith Sr. at Common Law Tortious Interference w/Economic Advantage"</u>

Plaintiff styles Count III as a claim for "tortious interference with economic advantage." Given Plaintiff's factual allegations and given this Court's duty to construe claims by *pro se* plaintiffs liberally, the Court construes her allegations as asserting claims for both tortious interference with contract and tortious interference with economic advantage.

---

[20]  Although Plaintiff alleges that Smith terminated her, the Court notes that his employment with COG ended on or around January 18, 2008 and it was not until March 11, 2008 that Plaintiff was notified of her termination, which became effective on March 31, 2008.  (*See* Amend. Compl. ¶¶ 87-88.)  Thus, it is not entirely clear to what extent, if any, he can be held individually liable for her termination under Section 1981.  However, because the termination is only one of many discrimination and retaliation allegations, the Court will leave this question for another day.

Plaintiff blames Smith for the loss of her job, despite her expectation that her employment would continue. (Amend. Compl. ¶¶ 117-19.) "[T]he elements of tortious interference with contract are: '(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach.'" *Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003) (citations omitted). At-will employees may bring such claims against their supervisors if the facts alleged by the Plaintiff indicate that a supervisor acted with malice for the purpose of causing the at-will employee's "contract" to be terminated. *See Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.,* 565 A.2d 285, 290-91(D.C. 1989). As such, Plaintiff has asserted sufficient facts to sustain a claim against Smith for tortious interference with contractual relations between she and COG.

Plaintiff also blames Smith for damaging her reputation and she appears to allege that she is no longer employable as a consequence of his conduct. (Amend. Compl. ¶ 118.) Unlike her allegations relating to her employment with COG, these allegations regarding future employment do not support a claim for relief. "The elements of tortious interference with prospective business advantage mirror those of interference with contract. To prevail, however, a plaintiff obviously need not demonstrate the existence of a contract, but merely a prospective advantageous business transaction." *Casco Marina Dev.*, 834 A.2d at 84 (citation omitted). Nonetheless, that prospective business advantage must be one that is "commercially reasonable to expect." *Sabre Int'l. Sec. v. Torres Advanced Enterprise Solutions, Inc*., 820 F. Supp. 2d 62, 77 (D.D.C. 2011) (citing *Democratic State Comm. of the District of Columbia v. Bebchick,* 706 A.2d 569, 572 (D.C.1998)). Moreover, "a plaintiff must show that the interference [of the accused] was intentional and that there was resulting damage." *Brown v. Carr*, 503 A.2d 1241,

1247 (D.C. 1986) (citation omitted). Plaintiff's vague assertions that she was unable to find a

job after her termination are not sufficient to meet these requirements. Such assertions do not

support the inference that Smith "intentionally" interfered, *Brown*, 503 A.2d at 1247, with any

prospective business advantage that was "commercially reasonable to expect." *See Sabre Intern.

Sec.*, 820 F. Supp. 2d at 77.

To the extent Plaintiff claims Smith intentionally interfered with a "prospective business

advantage" relating to her personal affairs, (*see* Amend. Compl. ¶ 68), such claims must be

pursued through a separate lawsuit. Any such claims are not "so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy." *See* 28

U.S.C. § 1367(a). Thus, the Court declines to exercise jurisdiction over these claims.


        5.      Count IV:        "(Common Law) Common Law Fraud, Deceit,
                                 Misrepresentation in Employment as to Calvin L. Smith, Sr."

In her complaint, Plaintiff asserts that Smith offered her employment at COG and she

accepted the offer as a "true representation." (Amend. Compl. ¶ 125.) However, in the course of

her employment he "targeted" her, "harassed" her, and subjected her to "false and frivolous

Mandatory counseling, under threat of termination." (Amend. Compl. ¶¶ 126-127.) Plaintiff

asserts that Smith was motivated, at least in part, by the desire to "improperly assert himself in

some type of relationship, from which to obtain control/access to Plaintiff's personal affairs."

(Amend. Compl. ¶ 128.) As a consequence of Smith's alleged conduct, Plaintiff claims she was

"prevented from the enjoyment of her employment" and that she suffered damages "both in her

employment and beyond." (Amend. Compl. ¶¶ 129-30.)

These facts are insufficient to establish fraud or misrepresentation in connection with

Plaintiff's employment at COG. Indeed, Plaintiff admits she was offered employment and

accepted it.  Thus, with respect to her employment at COG, there was no "false representation of

a material fact" and no evidence that Plaintiff suffered damages as a result of any alleged false

representation.  *See* Stevens, Ed. Standard Civil Jury Instructions for the District of Columbia §

20.01 (2013 Rev. Edition).

To the extent Plaintiff alleges that Smith offered her employment at COG for the purpose

of ultimately gaining access to her family home, for the purpose of gaining control over her

personal affairs, or for some purpose not directly related to her employment at COG, (see

Amend. Compl. ¶¶ 68, 128,148-49), she must pursue any fraud claims in this regard elsewhere

because the undersigned declines to exercise supplemental jurisdiction over such claims.  *See* 28

U.S.C. § 1367(a).


      6.     <u>Count V</u>:     <u>"(Common Law) Violation of D.C. Code § 22-3704 Bias<br>Motivated . . . [sic] Intimidation Calvin L. Smith, Sr."</u>

Plaintiff next asserts a claim under the District of Columbia Bias-Related crime statute,

which contains the following provision allowing civil actions:

> Irrespective of any criminal prosecution or the result of a criminal prosecution, any person who incurs injury to his or her person or property as a result of an intentional act that demonstrates an accused's prejudice based on the actual or perceived race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, homelessness, physical disability, matriculation, or political affiliation of a victim of the subject designated act shall have a civil cause of action in a court of competent jurisdiction for appropriate relief . . . .

D.C. Code Section 22-3704(a).

This provision does not appear to apply to the instant set of facts because it appears to

solely allow civil actions for conduct that would constitute a bias related "crime."  Indeed, the

District of Columbia enacted the bias related crime legislation "to provide for the collection and

publication of data about bias-related crime, and to provide enhanced penalties for persons who

commit a bias-related crime and appropriate <u>civil relief</u> for a victim of bias-related <u>crime</u>."  D.C.

Legis. Serv. 8-121 (Act 8-130) (1990) (emphasis added).  The Act defines a "Bias-related crime"

as a "<u>designated act</u> that demonstrates an accused's prejudice based on actual or perceived"

status such as race, color, religion, national origin, sex, age and sexual orientation.  D.C. Code §

22-3701(1) (emphases added).  A "designated act" is defined as a "criminal act."  D.C. Code §

22-3701(2).  Plaintiff has not set forth any facts that might indicate Smith committed a bias

related "crime" with respect to her and, even if she had, that any such crime somehow related to

her employment at COG.  As such, Count V of her complaint will be dismissed with prejudice.


       7.    <u>Count VI</u>:    <u>"Retaliation Based on Ethnicity/National Origin Violation of 42 U.S.C. § 1981 as to Calvin L. Smith, Sr., Paul DesJardin, Imelda Roberts, Janet Ernst, as to Eulalie Gower Lucas, Abdul Mohammad"</u>

In Count VI, Plaintiff makes a blanket allegation that Smith, DesJardin and the other

named Defendants retaliated against her because of ethnicity by engaging in much of the same

conduct associated with Smith.  (Amend. Compl. ¶ 136.)  These blanket allegations alone are not

sufficient to sustain actionable Section 1981 claims against all of the named individual

defendants, particularly where Plaintiff sets forth no facts that might indicate some of the

defendants had supervisory authority at COG.  As such, the Court will examine the specific

claims Plaintiff makes with respect to each of the named COG defendants.


       a.       **Smith**

This claim is mirrors Count II with respect to Calvin Smith.  Therefore Count VI will be

dismissed with respect to Smith.

### b.          DesJardin

After she initiated discussions with EEO Representative Mesrat Seifu, Plaintiff alleges that Paul DesJardin, her co-supervisor, and Smith informed her that she was being terminated because "she had not done any work, shown initiative, creativity, or an outgoing attitude." (Amend. Compl. ¶¶ 52, 54.) This threat apparently occurred around the time of her performance appraisal in August or September 2006, but apparently the termination matter was initially resolved because Plaintiff continued at COG until March 2008. (*See* Amend. Compl. ¶¶ 52-69, 88.) However, Plaintiff claims that as a consequence of the appraisal (which apparently was resolved as well) she was "left in total isolation." (Amend. Compl. ¶ 61.) Later, after she complained about an incident involving a co-worker, Plaintiff claims DesJardin and Smith failed to resolve the matter, but instead created "more hostility around Plaintiff, casting Plaintiff in a false light as a troublemaker who doesn't do her work." (Amend. Compl. ¶¶ 63-64.)

In the paragraph following her discussion of the alleged hostility, she indicates that she "inquired into the internal/external EEO grievance process again," but "aborted this second attempt" after the "incidents of bullying and intimidation intensif[ied]." (Amend. Compl. ¶ 65.) Although she does not directly link the intensified bullying and intimidation to DesJardin, she does allege that he and Smith later increased her workload, thereby forcing her to withdraw from training courses she sought to complete in an effort to transition to another COG department outside of the supervision of Smith and DesJardin. (Amend. Compl. ¶ 71.) Plaintiff also alleges that both Smith and DesJardin were involved in the second attempt to unjustifiably subject her to EAP counseling. (Amend. Compl. ¶ 84.)

Finally, Plaintiff groups DesJardin in with the COG employees whom she accuses of ostracizing her, denying her work opportunities, and terminating her. (Amend. Compl. ¶ 136).

Because DesJardin was Plaintiff's supervisor and some of the alleged conduct was sufficient to meet the "adverse consequences" test, Plaintiff's allegations support a Section 1981 claim for retaliation. *See Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006) (finding lengthy reduction in responsibility was sufficient to constitute "adverse consequences affecting the terms, conditions, or privileges of employment"); *Ayissi-Etoh*, 712 F.3d at 578 (discussing retaliation standard) (citing *Holcomb*, 433 F.3d at 901-02); *Tnaib v. Document Techs., LLC*, 450 F. Supp. 2d at 92 (discussing Section 1981 claims as applied to individuals with supervisory authority).

c.        **Roberts**

Imelda Roberts was COG's Director of Human Resources. (Amend. Compl. ¶ 13.) With respect to Roberts, Plaintiff first contacted Roberts around 2006 about the problematic performance appraisal and the decision by Smith and DesJardin to terminate her. (Amend. Compl. ¶ 55.) Apparently Roberts initially indicated she was unaware of the decision and had not received a copy of Plaintiff's performance appraisal, but later reviewed the performance appraisal and allegedly lied by indicating Plaintiff had signed the performance appraisal, although Plaintiff claims she had not done so. (Amend. Compl. ¶¶ 54-56.) Later, in the aftermath of a November 2007 email Plaintiff distributed at COG, Roberts and Smith asked Plaintiff to send an apology to her co-workers. (Amend. Compl. ¶¶ 76, 80-83.) The nature of the email is unclear from the complaint.

In addition to these allegations specifically directed at Roberts, Plaintiff also alleges that Roberts individually and collectively, along with the other named defendants, engaged in a long list of retaliatory acts, including isolating and criticizing Plaintiff, denying her work opportunities, terminating her, as well as alleging she was homeless and that she was an

undocumented immigrant, subjecting her to a "false and fabricated mandatory EPA process under the threat of termination," "subjecting her to events and incidents that disrupted her ability to work," and terminating her. (Amend. Compl. ¶¶ 136, 140.) As Human Resources Director, Roberts appears to have had some decision making and/or supervisory authority. Because it is unclear to what extent she may have participated in the challenged conduct while exercising that authority, dismissal of the Section 1981 retaliation claim asserted against Roberts is not appropriate at this stage of the litigation.

              d.           **Mohammad**

Abdul Mohammad was the Senior Transportation Engineer at COG. (Amend. Compl. ¶ 17.) Plaintiff claims that she "had an incident with" Mohammad in the COG "kitchenette area, which caused Plaintiff to be burned with hot water." (Amend. Compl. ¶ 72.) While she claims she reported "other incidents" to HR involving Mohammad "in the kitchenette" or "walking down the hall that put her at great discomfort, to the point of intimidation," she does not provide any specific details. (Amend. Compl. ¶ 73.) Plaintiff also claims Mohammad, individually and collectively, engaged in the long list of challenged conduct discussed above. (Amend. Compl. ¶¶ 136, 140.) Inasmuch as there is no indication he had supervisory authority over Plaintiff, her Section 1981 claims against Mohammad will be dismissed with prejudice.

              e.           **Ernst**

Janet Ernst was a Human Resources Analyst, III at COG. (Amend. Compl. ¶ 14.) Plaintiff claims she discovered that certain "insurance/benefits information" was sent "c/o Jane Ernest," but that Plaintiff was informed by other employees that they had received their

insurance benefits information at their homes.  (Amend. Compl. ¶ 66.)  When questioned about the matter, Plaintiff claims Ernst "provided erroneous and misleading information."  (Amend. Compl. ¶ 67.)  Later, Plaintiff apparently commented about the allegedly erroneous information and Plaintiff's comments were later used by unidentified individuals to "mischaracterize her as having problems in her relations with co-workers and communication."  (Amend. Compl. ¶ 67.)  Plaintiff also alleges that her supervisors and Ernst "attempted" for a "second time" to force her participation in mandatory counseling.  (Amend. Compl. ¶ 84.)  Finally, Plaintiff alleges that she "made a complaint" to Ernst over Plaintiff's interactions with Defendant Abdul Mohammad.  (Amend. Compl. ¶ 73.)  Finally, Plaintiff again asserts this defendant, along with the other named defendants, individually and collectively engaged in the long list of actions discussed above.  Inasmuch as there is no indication that Ernst had any supervisory authority over Plaintiff, the Section 1981 claims against Ernst will be dismissed with prejudice.

>           f.           **Lucas**

The Court notes that in prior briefing, COG noted the absence of any allegations relating to Eulalie Gowers Lucas and the present complaint suffers from the same deficiency.  Plaintiff only indicates that Eulalie Gowers Lucas was a Transportation Engineer IV at COG.  (Amend. Compl. ¶ 15.)  Plaintiff then goes on to include Lucas in the list of defendants who allegedly engaged in the long list of actions discussed above.  (*See* Compl. ¶ 136.)  There is no indication Lucas had supervisory authority over the plaintiff and, therefore, the Section 1981 claims against her will be dismissed with prejudice.

8.     <u>Count VII</u>:     "<u>(Common Law Tortious Interference as to Calvin L. Smith,</u>
<u>Sr. Paul DesJardin, Imelda Roberts, Janet Ernst, Eulalie Gower</u>
<u>Lucas, Abdul Mohammad"</u>

Plaintiff asserts a common law tortious interference claim against all of the COG defendants.  She contends that she had reason to believe her employment would continue and that her reputation would "remain intact."  (*See* Amend. Compl. ¶¶ 144-48.)  However, according to Plaintiff, the alleged harassment by Smith, DesJardin, Roberts, Ernst, Lucas, Mohammad and Bailey[21] interfered with those expectations, causing her to suffer economic harm, including the inability to secure future employment, as well as the loss of her family home. (*Id*. ¶¶ 148-49.)

As discussed above, given the facts presented here, Plaintiff's inability to secure future employment does not support a claim for tortious interference with prospective business advantage.  Also, as indicated above, the Court declines to exercise jurisdiction over any claims relating to the loss of Plaintiff's home or any alleged interference with her personal affairs.  *See* 28 U.S.C. § 1367(a).  Finally, her claims relating to her loss of employment at COG are cognizable only to the extent they are asserted against defendants who had some level of supervisory authority: Smith, DesJardin and, presumably, Roberts.  *See Sorrells*, 565 A.2d at 290-91.  Thus, this count will be dismissed without prejudice as asserted against the remaining COG defendants.

---

[21]  Defendant Dennis Bailey was a Public Safety Planner at COG.   (Amend. Compl. ¶ 16.)  Although he is not listed in the caption for Count VII, he is listed as one of the defendants in the body of the text for Count VII.  (*See id*.)

9.     <u>Count VIII</u>:     "<u>(Common Law) Violation of D.C. Code § 22-3704 Bias</u> <u>Motivated . . . Intimidation as to Calvin L. Smith, Sr. Paul</u> <u>DesJardin, Imelda Roberts, Janet Ernst, Eulalie Gower Lucas,</u> <u>Abdul Mohammad</u>"

In addition to Smith, Plaintiff also asserts a civil claim under the Bias-Related crime statute against the other individual COG defendants. However, as with Smith, Plaintiff has not asserted any facts that might remotely support this claim with respect to DesJardin, Roberts, Ernst or Lucas. Thus, Plaintiff's claim will be dismissed with prejudice as asserted against these defendants.

To the extent Plaintiff seeks relief under the civil remedies provision of the hate crime statute against Mohammad, with whom she had an "incident . . . which caused [her] to be burned with hot water," (Amend. Compl. ¶ 72), the Court declines to exercise jurisdiction. *See* 28 U.S.C. § 1367(a). Accordingly, this count will be dismissed without prejudice as asserted against Mohammad.

10.     <u>Count IX</u>:     "<u>Hostile Work Environment/Disparate Treatment</u> <u>Based on Ethnicity/National Origin Violation of 42 U.S.C. § 1981</u> <u>as to COG</u>"

Plaintiff alleges widespread harassment involving both of her supervisors, as well as numerous co-workers. As such, Plaintiff's Section 1981 harassment claim is actionable against COG directly. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577-78 (D.C. Cir. 2013) (discussing employer liability for supervisor and co-worker harassment).

11.     Count X:     "Retaliation Based on Ethnicity/National Origin
                                                  Violation of 42 U.S.C. § 1981 as to COG"

Given the viability of Plaintiff's retaliation claims against several individual COG

defendants, Plaintiff's Section 1981 retaliation claims directly asserted against COG may go

forward.


12.     Count XI:     Title VII Discrimination based on gender and
                                                  national origin
              Count XII:     Title VII Retaliation based on gender and national
                                                  origin
              Count XIII:     ADEA disparate treatment
              Count XIV:     ADEA retaliation

As discussed above, Plaintiff cannot proceed with her Title VII, ADEA claims or national

origin claims and, therefore, the motion to amend her complaint will be denied with respect to

these claims.


13.     Count XV:     "Common Law Fraud, Deceit, Misrepresentation in
                                                  Employment as to COG"

In Count XV, Plaintiff asserts a claim for fraud against COG. Here she attempts to hold

COG responsible for Smith's alleged fraud with respect to her offer of employment and his

alleged "frivolous" referral of her to mandatory counseling. (Amend. Compl. ¶ 187-89.) She

claims the goal behind this alleged fraud was to "assert himself in some type of relationship,

from which to obtain control and access to Plaintiff's personal affairs and assets." (Amend.

Compl. ¶ 186-90.) As discussed above, these facts are not sufficient to support a claim for fraud

with respect to Plaintiff's employment and any alleged employment related damages. Therefore,

this claim will be dismissed with prejudice.

14.    Count XVI:    "Common Law – Negligent . .. [sic] Retention/
                     Supervision As to COG"

Plaintiff asserts a claim for negligent retention and/or supervision against COG in Count

XVI.  Here Plaintiff alleges that COG, acting through its agents, breached its duty of care when it

failed to properly monitor and manage its employees.  (Amend. Compl. ¶ 195.)  Under District of

Columbia law, "negligence claims such as negligent supervision or retention must 'be predicated

only on common law causes of action or duties otherwise imposed [on the employer] by the

common law.'"  *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 252-3 n. 21 (D.D.C. 2011)

(citing *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576-77 (D.C. 2007)).  "A claim that an

employer negligently supervised an employee who has sexually harassed a co-employee does not

transmute sexual harassment into a common law tort."  *Griffin*, 925 A.2d at 576-77 (citation

omitted).  This same logic applies to claims of racial harassment which do not have their basis in

common law duties, but instead are based on statutory rights that cannot support a negligent

supervision claim.  *See id.* at 576 (listing an employer's common law duties and noting that such

duties do not include a duty to protect an employee against gender harassment) (citing Prosser &

Keeton on Torts § 80, at 569 (5th  ed. 1984)).

However, because Plaintiff has a plausible claim against Smith, DesJardin and Roberts

for tortious interference with contract, Plaintiff may proceed with her negligent retention and/or

supervision claim against COG.

15.    <u>Count XVII</u>:    <u>"Violation of D.C. Code § 22-3704 Bias Motivated . . .</u>
                            <u>Intimidation as to COG"</u>

Plaintiff has not alleged any facts that would indicate COG engaged in any Bias-Related

criminal activity.  Thus Plaintiff's claim under the D.C. bias statute is not actionable against

COG.

16.    <u>Count XVIII</u>:  "<u>Count XVIII Molly Keller and MHNET Retaliation</u>
                            <u>Based on Ethnicity/National Origin Violation of 42</u>
                            <u>U.S.C. § 1981"</u>

Although Plaintiff's heading for Count XVIII indicates that the count is directed at

MHNet and Keller, Plaintiff does not set forth any allegations relating to either the company or

Keller in this section of her complaint.  Instead, she alleges that COG, along with its supervisors

and agents, individually and collectively, engaged in intentional retaliation against Plaintiff.

(Amend. Compl. ¶ 203.)

In contrast, the body of her complaint contains specific allegations against Keller.

Plaintiff contends that that she contacted Keller under threat of termination and explained that

the communication with Keller was not voluntary.  (Amend. Compl. ¶ 89-90.)  Plaintiff also

alleges that Smith indicated Keller "would explain the nature/basis of the issue," with respect to

the counseling referral, but Keller never provided any explanation and simply referred Plaintiff

back to Smith."  (*Id*. ¶ 91.)  Keller also allegedly referred Plaintiff to the November 2007 email,

she had authored, and told Plaintiff she should consider an apology.  (*Id*.)

Plaintiff further contends she was referred to Keller a second time, after which Plaintiff

informed Keller that the referral was a pretext for retaliation carried out by a "disaffected co-

manager."  (Amend. Compl. ¶ 92.)  Based on these facts, Plaintiff contends that Keller "and by

extension MHNet supported Smith and that support constituted retaliation." (Amend. Compl. ¶ 94.)

Plaintiff has not cited to, and the Court is not aware of, any legal authority that allows her to hold her employer's contractor liable for alleged discrimination she suffered at the hands of the employer's servant. Section 1981 protects an individual's right "to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[T]he term 'make and enforce contracts' includes the making, performing, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Plaintiff's claims do not appear to implicate a "contractual relationship" between she and MHNet or Keller. Accordingly, this claim will be dismissed with prejudice.


      17.    <u>Count XIX</u>:    <u>"Common Law – Negligent . . . Retention/Supervision as to Molly Keller and MHNET"</u>

Plaintiff alleges that MHNet breached its duty to secure and supervise qualified and well-trained employees and that MHNet's alleged failure to do so is actionable. (Amend. Compl. ¶¶ 95, 207-12.) According to Plaintiff, MHNet "exhibited deliberate indifference, subjecting Plaintiff to intentional discrimination . . . and retaliation." (Amend. Compl. ¶ 211.) However, as explained above and below, Plaintiff has not asserted a viable claim against Keller, MHNet's employee. Therefore, Plaintiff cannot assert a negligent retention/supervision claim against MHNet as Keller's employer. Accordingly, this claim will be dismissed with prejudice.

18.    Count XX:    "Common Law - Negligence Molly Keller and MHNET"

Plaintiff appears to assert that Keller was negligent because she allegedly engaged in conduct that furthered Smith's "fabricated and false" referral of Plaintiff for counseling, thereby allegedly breaching Keller's duty of care to Plaintiff as a potential client.  (*See* Amend. Compl. ¶¶ 95, 214-18.)  It is unclear what duty of care either Keller or MHNet owed to Plaintiff under these circumstances and what, if any, damage was proximately caused by the referral. Accordingly, this claim will be dismissed with prejudice.

19.    Count XXI:    "Common Law – Tortious Interference W/Economic
                          Advantage Molly Keller and MHNET"

Finally, Plaintiff asserts a tortious interference claim against MHNet and Keller.  In support of this claim, Plaintiff alleges that Keller's involvement in the "false and fabricated" referral to counseling interfered with Plaintiff's continued employment at COG.  (Amend. Compl. ¶¶ 219-224.)   These allegations are not sufficient to establish that Keller intentionally procured a breach of Plaintiff's employment contract.  *See Casco Marina Dev*., 834 A.2d at 83. As such, this claim will be dismissed with prejudice.

## III.  CONCLUSION

For foregoing reasons, the Court will grant Plaintiff relief in part and deny relief in part. The Court will grant Plaintiff's motion for relief from judgment on her Section 1981 claims. However, the motion will be denied with respect to Plaintiff's Title VII, ADA, ADEA, gender discrimination, sexual harassment and national origin claims.

Plaintiff's motion to amend her complaint will be granted on the following claims: Ethnicity based Section 1981 Retaliation and Hostile Work Environment claims asserted against

COG (Count IX and Count X) and Calvin Smith (Count I and Count II); Ethnicity Based Section 1981 Retaliation claims asserted against DesJardin (Count VI), and Roberts (Count VI); Tortious Interference with Contract claims asserted against Smith (Count III), DesJardin (Count VII) and Roberts (Count VII) for alleged interference with Plaintiff's employment at COG; and negligent supervision and/or retention as asserted against COG (Count XVI). The remaining claims will be dismissed.

A separate Order accompanies this Memorandum Opinion. Any further motions to amend will be viewed with extreme disfavor. Plaintiff has had countless opportunities to amend her complaint in the face of numerous motions to dismiss, as well as dismissal of her action by this Court. As such, additional amendments are unwarranted.

Going forward, the Court admonishes Plaintiff that it will not tolerate further redundant and excessive court filings, as well as Plaintiff's failure to comply with both the Local Rules of the Court and the Federal Rules of Civil Procedure.

_____
ROBERT L. WILKINS
United States District Judge

SO ORDERED.

Date: September 30, 2013