**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Chinyere Uzoukwu,  )
                *Plaintiff,*  )
     v.  )  Civil Action No. 1:11-cv-0391
                  )  Judge Robert L. Wilkens
Metropolitan Washington Council of  )
Governments, *et al.*  )
           *Defendants.*  )
                  )

**PLAINTIFF'S POST-JUDGMENT
AMENDMENT COMPLAINT
OF EMPLOYMENT DISCRIMINATION AND RETALIATION
PURSUANT TITLE VII 42 U.S.C § 2000 *et seq as amended* AND 42 U.S.C § 1981 *as amended***

Plaintiff, Chinyere Uzoukwu (aka Chinyere C. Uzoukwu) pro se, comes before this Court against Defendant Metropolitan Washington Council of Governments (COG) several of its agents/representatives, as individual employees, Calvin L. Smith Sr., Paul DesJardin, Imelda Roberts, ~~Janet Ernst, Eulalie Gowers Lucas, Dennis Bailey, and Abdul Mohammad; Maryland Liability Company "MHNET" located in Austin Texas, a subsidiary of Coventry Health Care, Inc. a Maryland Corporation, located in Silver Spring, Maryland, and its agent/representative, as individual employee, Molly Keller and brings the following claims:~~

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action for declaratory, equitable compensatory relief and punitive damages to the harms and injuries she suffered and sustained as a consequence of acts, conduct/behavior by the Metropolitan Washington Council of Governments (COG) that subjected her to discrimination and retaliation in the course of her employment. COG did not adequately monitor the conduct of its employees, including service providers; breached its duties and obligations in subjecting Plaintiff to harm and injury in violations of ~~Title VII of the Civil Rights~~

Act of 1964, 42 U.S.C. §2000(e) *et seq., as amended*, ADEA, and ADA; and 42 U.S.C. §1981, *as amended*; in addition to state/common law torts.

2.     Additionally Maryland Liability Company "MHNET" located in Austin Texas, a subsidiary of Coventry Health Care, Inc. a Maryland Corporation, located in Silver Spring, Maryland, and its agent/representative, Molly Keller, subjected Plaintiff to harm and injury in the course of providing its services, in violation of 42 U.S.C. §1981, *as amended*; in addition to state/common law torts.

### JURISDICTION AND VENUE

3.     This action arises under the Constitution and laws of the United States and presents a federal question within the Court's jurisdiction under 28 U.S.C. §§ 1331, 1367, 1391, 2201, 2202, 42 U.S.C. § 2000e-5(f) *et seq*, and 42 U.S.C. § 1981.

4.     The Court has supplemental jurisdiction over other claims, so related to Plaintiffs federal claims as to form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

5.     Venue is appropriate, pursuant to 28 U.S.C. § 1391, as Plaintiff was an employee of the Metropolitan Washington Council of Governments (COG), the District of Columbia. The defendant operation and business facilities in this district, and the actions and unlawful employment practices alleged herein were committed within the District of Columbia.

6.     Venue is appropriate pursuant to 28 U.S.C. § 1391, and D.C. Code Ann. §13-422 (a)(b)(c)(d) as Maryland Liability Company "MHNET" located in Austin Texas, is a subsidiary of Coventry Health Care, Inc. a Maryland Corporation, located in Silver Spring, Maryland. MHNET is a service provider to COG and its employees.

### PLANTIFF

7.     Plaintiff Chinyere Uzoukwu (aka Chinyere C. Uzoukwu) is, a black female, over 40 years of age, whose nation of origin is Nigeria, and at all times relevant to this litigation was, a

resident/citizen of the State of Maryland and employed by The Metropolitan Washington Council of Governments (COG) as a Policy Analyst/Planner.

8.    Plaintiff was born in the west-African country of Nigeria; is a naturalized citizen of the United States and identifies herself as Black, and (African/Nigerian) Nigerian-American.

9.    Defendant, The Washington Metropolitan Council of Governments (COG) is, an independent, nonprofit association and a regional organization of Washington area local governments, comprised of 21, local governments surrounding the nation's capital, with its office of operations in the District of Columbia employing approximately 50 or more employees, at all times relevant to this litigation.

10.   COG's aims to develop regional solutions to such issues as the environment, affordable housing, growth and development, public health, child welfare, public safety, homeland security, and transportation.

11.   Defendant, Calvin L. Smith, Sr., is, and at all times relevant to this litigation, Director, Human Services Planning and Public Safety (HSPPS), and Plaintiff's co-manager along with Smith.

12.   Defendant, Paul DesJardin, is, and at all times relevant to this litigation, Chief, Housing and Planning, at the Metropolitan Washington Council of Governments (COG), and Plaintiff co-manager along with Smith..

13.   Defendant, Imelda Roberst, is, and at all times relevant to this litigation, Director, Human Resources at the Metropolitan Washington Council of Governments (COG).

14.   Defendant, Janet Ernst, is, and at all times relevant to this litigation, Human Resources Analyst III, at the Metropolitan Washington Council of Governments (COG).

15.   Defendant, Eulalie Gowers Lucas, is, and at all times relevant to this litigation, Transportation Engineer IV at the Metropolitan Washington Council of Governments (COG)

16.    Defendant, Dennis Bailey, is, and at all times relevant to this litigation, Public Safety Planner II at the Metropolitan Washington Council of Governments (COG).

17.    Defendant Abdul Mohammad, is, and at all times relevant to this litigation, Senior Transportation Engineer at the Metropolitan Washington Council of Governments (COG)

18.    Defendant Maryland Liability Company "MHNET" a subsidiary of Coventary Health Care, Inc. a Maryland Corporation is, a service provider to COG, with approximately 50 or more employees, at all times relevant to this litigation, the employer of Molly Keller.

19.    Defendant, Molly Keller is, and at all times relevant to this litigation, an agent/representative/employee of Maryland Liability Company "MHNET" a subsidiary of Coventary Health Care, Inc. a Maryland Corporation.

## FACTS

20.    From the period February 13 2006 through March 11, effective March 31, 2008, Plaintiff was employed at COG as a Policy Analyst/Planner.

21.    Plaintiff is, and at all times relevant, a black female, over 40 years of age, whose nation of origin is Nigeria.

22.    On January 31, 2006, Plaintiff was offered the position of Policy Analyst in HSPPS, as a direct report to Smith, a different position than that applied for when another individual Robert Young was offered the Public Safety Planner, under the direction of the Public Safety Manager, Steve Dickstein.

23.    According to defendant COG, in the June 24, 2008 Statement of Position, the position of Policy Analyst, at a pay grade of eight (8) was strictly a creation of Smith, in all other departments and programs of COG, policy analysis is an incorporated function of the position of Program

Manager or Planner, not a position distinct on its own; these similarly situated or equivalent positions are at pay grade levels of ten (10) or eleven (11).

24.     Previous to meeting Calvin L. Smith Sr., in the context of employment with COG, Plaintiff did not know him, had never met him and/or interacted with him in any capacity, despite his portrayal to and within COG that he was known to Plaintiff.  Plaintiff did not know Smith or anyone else at COG, outside of this employment situation.

25.     Plaintiff worked under the co-management/supervision of Calvin L. Smith, Sr., and African-American male and Paul DesJardin, a Caucasian male.

26.     On about February 20, 2006, days after Plaintiff began work at COG, Plaintiff was leaving the office at about 6:30, when Smith, Plaintiff's director, offered to give her a ride home, indicating that he lived near Plaintiff and took "the route by her home to go home."

27.     Plaintiff never informed Smith where she lived, nor inquired where he lived, but indicated to him that her car was near, at the metro and she would take the metro. Smith insisted that he drop her and that her trip was not out of his way. Plaintiff complied and allowed Smith to drop her by Takoma Metro Station where she parked.

28.     On about February 22nd or 23rd, in a second incident, Plaintiff was again leaving the office and had walked almost to Union Station, when Smith, apparently returning to the office, called out to Plaintiff who was about to enter the station, asking where she was going; Plaintiff responded she was going home. Smith offered her a ride, but Plaintiff indicated that she was parked at Prince George's Metro, and taking the metro was fine.

29.     Smith indicated that he had not had time to meet with Plaintiff that day to find out how she was progressing on assignments. Plaintiff was giving him a brief update and Smith suggested she can tell him as he gave her a ride to her car. So, Plaintiff walked back with him to the office parking

lot where he was parked, and Smith gave her a ride to Prince George's Metro and along the way discussed Plaintiff's work.

30.     On March 1, 2006, Smith asked Plaintiff to work on the Day Labor Conference, with Lauren Udwari and Nicole Hange, two white females, in their mid-twenties; Plaintiff was to monitor, congressional immigration and regional Day Laborers legislation for this event.

31.     On March 9, 2006, Plaintiff attended the first meeting for the Day Labor Conference with Udwari and Hange. At the end of this meeting, Smith asked Plaintiff to remain behind. He went on to discuss with Plaintiff his challenges; stating his difficulties in "being a black director in a department that wanted to revolt" against him, citing that DesJardin, Plaintiff's co-manager applied for his position, and because he did not get it, it was sometimes difficult and challenging to work with him. He also went on to describe other members of the department in a derogatory context.

32.     On March 14, 2006, DesJardin came to talk to Plaintiff stating that Smith informed him she was having problems with Udwari. Plaintiff was clueless about any problems and informed DesJardin that she just met Udwari and only began working with her on March 9th.

33.     On about March 20, 2006, Smith again offered Plaintiff a ride home, Plaintiff, uncomfortable with this offer, declined and indicated that she wasn't going home, but rather to meet some friends.

34.     On March 21, 2006, Plaintiff had a strange email exchange with Udwari,

35.     On March 22, 2006, Udwari sent Plaintiff an email apology, regarding the email she sent the day before on March 21, despite the fact that her office is immediately next to Plaintiff.

36.     On March 27, 2006 Greg Goodwin (the EEO Rep for the Department) who up to that point had not spoken to Plaintiff, came to ask Plaintiff how things were going, more specifically, if there

were any issues with the Day Labor Conference (with Udwari and Hange). Plaintiff informed him

that things were fine and everyone was working on their part of the program, at which point he left.

37.     On March 31, 2006, Plaintiff received an email for a meeting, on Monday April 3, 2006,

from the Executive Director, upset that the "DRAFT" resolution Plaintiff was assigned to work on

by Smith had been placed in the Day Labor Conference Notebooks, distributed to attendees/media.

38.     Smith did not attend the April 3rd meeting called by the Executive Director.

39.     Plaintiff believes Smith used Udwari in this incident, to show he can exert his influence over

her and her work. The last communication on this issue was between Udwari and Smith.

40.     Additionally, Plaintiff was tasked to work on the April 2006 Predatory Lending Conference;

in the course of this event Plaintiff discovered information pertaining to one Rodney Byrd. In

passing Plaintiff [in shock] remarked to then co-worker Dara Dann and DesJardin that Byrd

attempted to scam her father [in 2000]. Smith inquired about this, Plaintiff informed him she didn't

know Byrd, but had this unfortunate incident relative to him.

41.     On April 19, 2006 Smith indicated that he was taking the Day Labor Conference Team to

Lunch at Capital Brewery, located at North Capitol and Mass. Ave. At about 11:30/45 he stopped

by Plaintiff's office and together Smith and Plaintiff walked to Capital Brewery. However, upon

arrival, no other Conference Team Member was at Capital Brewery. In the interim while waiting for

others to arrive, Plaintiff and Smith ordered and Smith began to talk about the Day Labor incident,

which was upsetting, as he did not show up for the April 3rd meeting. Throughout this lunch for the

Day Labor Conference Team, no one else arrived.

42.     Smith brought up "white privilege" to explain Udwari's behaviour, Plaintiff replied that

"white privilege" is not available to her as she is not white.  Smith indicated he would talk with

Udwari and asked Plaintiff to do the same. In addition, he gave Plaintiff an event to place on his calendar: The 7th Annual Harlem Rennaissance Festival Kick-Off Breakfast.

43.     On April 29, 2006, when Plaintiff realized that the The 7th Annual Harlem Rennaissance Event Smith asked her to place on his calendar was scheduled on Saturday, a weekend and non-related to COG, Plaintiff declined the event and informed Smith she did not realize it was on a weekend.

44.     On May 11, 2006, Plaintiff attended the Substance Abuse Sub-Committee of the Health Policy Committee, supported by Udwari. The meeting went well. There were no problems.

45.     On May 15, 2006 Smith called Plaintiff to a meeting in his office in the morning and informed her that he did not want her involved with the Substance Abuse Sub-Committee; the Substance Abuse sub-committee, staffed by Udwari, reported through the Health Policy Committee, staffed/supported by Plaintiff.

46.     Later that afternoon, Smith sent notice that either Plaintiff or Udwari would move, offering no reason for the move or where either would move.

47.     Smith also denied Plaintiff another work opportunity when he informed Plaintiff that the Executive Director preferred that Dara Dann, a white female, serve as point of contact for a correlating TPB committee to coordinate with the Human Services Policy Committee staffed/supported by Plaintiff.

48.     In May 2006, Plaintiff made a complaint to Human Resources Analyst, Larissa Williams about the treatment of another employee, Gary Givens, after an incident Plaintiff encountered upon return from lunch, involving an extremely loud altercation for over a half. Plaintiff initially ignored the boisterous altercation, but because it continued almost a half hour [and Plaintiff could clearly hear in her office 4 or 5 office away], Plaintiff went to investigate and stumbled upon the troubling

scene with Desjardin, EEO Rep Greg Goodwin, and Givens in argument. Williams suggested Plaintiff share the matter with Smith.

49. Givens later informed Plaintiff that "they were trying to get rid of him, that's how they put the fix on him". Plaintiff indicated she mentioned the matter to personnel and Smith, Givens indicated that "they already know" and that he didn't want me "to get mixed up with it".

50. On May 31, 2006, after a Public Safety Meeting, Plaintiff received a call from one Special Agent Arnold "Keith" Adkins, Jr., M.S. C. P.P. to discuss the work of the Public Safety Committee. Special Agent Adkins indicated that he obtained Plaintiff's number from Smith. Plaintiff informed him that any inquiries of the Committee, etc, should go through Smith, as Plaintiff was still new to the Committee and only provided support as needed with no authority to discuss the work outside the direction of Smith.

51. On June 1, 2006, Plaintiff received a strange email from Agent Adkins to "discuss business"

52. Troubled by the set of circumstances, that had transpired within the brief period, and the incidents involving Smith, by June 2006, Plaintiff initiated discussions with an EEO Rep outside her department, but later terminated discussions when she discovered the supposedly "confidential" conversations with the EEO Rep, Mesrat Seifu (?), were relayed back to her co-manager DesJardin; and with her Introductory Appraisal, she would be terminated or placed on an extended probation.

53. On July 5, 2006, Plaintiff returned from lunch to find her phones and computer disconnected before the office she was to move into was even cleaned out.

54. In the course of Plaintiff's Introductory Appraisal, in August 2006, Smith and DesJardin informed Plaintiff she was being terminated by approval of Human Resources, because she had not done any work, shown initiative, creativity, or an outgoing attitude.

55.    On September 1, 2006 Plaintiff contacted the Human Resources Director, regarding the information Smith and DesJardin provided that she was being terminated by approval of Human Resources…..

56.    The Human Resources Director was not aware of the decision and had not gotten Plaintiff's Appraisal/paperwork.

58.    On September 6, 2006, after Plaintiff informed the Human Resources Director, the day before, on September 5th that she along with Smith and DesJardin, were in the process of finalizing the Appraisal, the Human Resources Director sends a memo that she reviewed a copy of the appraisal bearing Plaintiff's signature dated August 31, 2006 with a rating of 90.

58.    Plaintiff could not have signed this document on August 31, 2006, when on September 5th was in the process of finalizing the very same document.

59.    On September 7, 2006, in the midst of the Introductory Appraisal issue, Plaintiff received the "SHIT" email from Dennis Bailey, Public Safety Planner II, who worked in the same department as Plaintiff, but was only remotely acquainted with Plaintiff.

60.    On September 11, 2006, Smith drafted a memo to Plaintiff over matters of the Introductory Appraisal that were earlier resolved and employed the opportunity of this memo to make false allegations against Plaintiff, implying that Plaintiff was in need of counseling. memorializing an intent he sought to realize a year later via his fabricated November 13, 2007 Mandatory Memo that again threatened Plaintiff with termination.

61.    As a consequence of this Appraisal, Plaintiff was left in total isolation.

62.    With regard to interactions with Smith, Plaintiff sought to only have team oriented encounters/interaction with Smith, such that each meeting, to the extent possible always involved another employee, so to mitigate one-on-one meetings with Smith.

63.     In April 2007, another employee, a female from Ethiopia, Ayan Adou, accepted responsibility to transcribe notes from a meeting, which impacted Plaintiff's work. This matter simple matter, escalated over a two or three week period to an issue Plaintiff had to bring to the attention of her supervisors Smith and DesJardin.

64.     Instead of trying to resolve the situation Smith and DesJardin used it as an opportunity against Plaintiff, creating more hostility around Plaintiff, casting Plaintiff in a false light as a troublemaker who doesn't do her work.

65.     With the incident of April 2007, Plaintiff inquired into the internal/external EEO grievance process again; after having her inquiry mischaracterized, and the continued incidents of bullying and intimidation intensifying, Plaintiff aborted this second attempt and began to diligently look to leave COG.

66.     In May 2007, Plaintiff discovered her insurance/benefits information were being sent to her c/o Janet Ernst. After inquiring from other employees, who indicated their information was sent to them at home, Plaintiff began looking into this matter in late May.

67.     Janet Ernst provided erroneous and misleading information, and when Plaintiff responded to that effect 2 months later, in July, Plaintiffs response was used to mischaracterize her as having problems in her relations with co-workers and communication.

68.     Around this same period, July 2007, Smith, began his allegations that Plaintiff was employing an identity that was not her own, attempting to claim property, in the District of Columbia, Plaintiff's family home, which he alleged did not belong to her and began monitoring a frivolous lawsuit, Plaintiff's younger brother, C. Eugene Uzoukeu (aka *Chukwunonye Uzoukwu*) was induced to file against her in April 2007; shortly thereafter Plaintiff received phone calls and emails on her COG email inquiring about one Dike (Marcel Uzoukwu) and properties in Baltimore.

Plaintiff neither knows Dike (Marcel Uzoukwu) nor his wife Chinyere Uzoukwu (aka *Chinyere E. Uzoukwu*) who is a nurse; nor ever owned properties in Baltimore and/or lived in Baltimore.

69.     Additionally, the false narrative employed by Smith and extended into Plaintiff's employment at COG, that Plaintiff appropriated the identity of another individual and his efforts to link Plaintiff to incidents involving this other individual, Dike Marcel Uzoukwu, his spouse Chinyere Uzoukwu (aka *Chinyere E. Uzoukwu*) and their network, via officials in Prince George's County, James Afeuh, Tommy Thompson, and another individual who served on COG's Washington Area Housing Partnership (WAHP), a Nigerian female who worked at Fannie Mae, extended the politically motivated retaliatory scheme of democratic political operative Harold J. Gist, on the basis of ethnicity/national origin.

70.     Smith, now employed the scheme, ("the Gist-Smith Retaliation") in furtherance of his "campaign of hostilities" against Plaintiff, despite Plaintiff informing both he and DesJardin that these individuals were unknown to her and unrelated to her.

71.     In the Summer of 2007, when Plaintiff sought approved training, via the University of Maryland at College Park, where Plaintiff completed her undergraduate studies, as a way to transition into another department at COG away from Smith and DesJardin, Smith and DesJardin increased her workload, forcing Plaintiff to withdraw from classes after her registration, and consequently incurring the bill, which remains on Plaintiff's account at UMD-CP until today, making it impossible for Plaintiff to obtain her undergraduate transcripts.

72.     On August 17, 2007, Plaintiff had an incident with one Abdul Mohammad, Senior Transportation Engineer, a male from Ethiopia, in the office kitchenette area, which caused Plaintiff to be burned with hot water.

73.    Plaintiff made a complaint to Janet Ernst, in Human Resources, because, she had experienced other incidents involving the same individual, in the kitchenette, or walking down the hall that put her at great discomfort, to the point of intimidation. Plaintiff's supervisors and HR to employed this incident to mischaracterize and use against Plaintiff.

74.    By this period, Plaintiff rarely left her office, except to go to the rest room, lunch, and meetings. Other employees would walk to her office, laugh, stare, then quickly move away.

75.    Additionally, Plaintiff's office was often compromised, her work and personal effects either moved or missing. In one incident, her Performance Appraisal, which Larissa Williams, Human Resources Analyst brought to her, was removed from her locked file cabinet.

76.    By October 2007, Plaintiff decided to just go along with this "unspoken joke" about her being homeless and an undocumented immigrant, with a Halloween email, to which Plaintiff responded by way of reference in a November 9, 2007 email.

77.    On November 13, 2007 Smith employed Plaintiff's November 9th email, as part of the basis to threaten Plaintiff with termination and subject her to a frivolous Mandatory EAP as a condition of continued employment.

78.    Plaintiff did not know and could not have known that Smith in this scheme misrepresented/implied some type of relationship/familiarity with her, a perversion, of Plaintiff's complaint against him.

79.    On November 13, 2007, Plaintiff contacted Human Resources about the matter. They supported Smith.

80.    By the November 13, 2007 Memo, Smith accused Plaintiff of "inappropriate conduct" based on a *"purported"* e-mail of October 31, 2007, he attributed to Plaintiff, and Plaintiff's email of November 9, 2007 [addressing the issue of individuals, an employee in TPB Raymond (?), and

Dennis Bailey who Plaintiff believed were responsible for breaching her office, etc.,] and a meeting he accused Plaintiff of missing, when Plaintiff had leave; the "inappropriate conduct remains a mystery.

81.     In supporting Smith's machination, COG exhibited deliberate indifference for Plaintiff, who made complaints about Smith, and made efforts to alter her interactions with him.

82.     In supporting Smith, COG compromised Plaintiff's safety and security to his whims.

83.     Additionally, Roberts and Smith asked Plaintiff to send an apology to her department co-workers in relation to the November 9, 2007 Email (*but notably not the October 31, 2007 Email, b/c this email did not originate from Plaintiff, and Plaintiff even took it as a joke*).

84.     On December 3, 2007, Smith, DesJardin, and Janet Ernst attempted a second time to subject Plaintiff to Smith's Mandatory Referral, demanded that Plaintiff begin the process again with Smith expressing his desire to be involved.

85.     Plaintiff believes Smith inappropriately employed this incident to contact Plaintiff's family and misrepresent Plaintiff to them, implying some type of guardianship/fiduciary relationship, misconstruing a complaint Plaintiff made against him.

86.     Plaintiff believes Smith employed the frivolous and fabricated Mandatory process in an attempt to obtain and exercise control over her.

87.     Shortly thereafter, Smith departed COG, December 18, 2007, effective January 18, 2008.

88.     When Plaintiff initiated an inquiry on January 11, 2008 on the outcome of the process COG subjected her to under the threat of termination, neither Molly Keller, and by extension MHNet nor COG could respond. COG providing a memo saying they were closing the process on February 1, 2008. When Plaintiff made further inquiry, her position was terminated on March 11, 2008, effective March 31, 2008.

89.     On November 13, 2007 Plaintiff  was in receipt of the memo to contact Molly Keller as a result of Smith's Mandatory EAP Memo falsely alleging "inappropriate conduct" on the part of Plaintiff, supported by three (3) frivolous attachments; an October 31, 2007 email (*allegedly from Plaintiff*); a November 9, 2007 email; and an allegation about a meeting Plaintiff missed on a day Plaintiff had approved leave in the morning, in addition to other false an unfounded allegations by Smith and, by extension, COG.

90.     On or about November 14, 2007 Plaintiff contacted Molly Keller; in so doing explained she was under the threat of termination [that she was not voluntarily contacting her]; additionally Plaintiff indicated that Smith and, by extension, COG, indicated that Molly Keller, and by extension MHNet, would explain the nature/basis of the issue on which the November 13, 2007 Mandatory EAP manifested.

91.     Molly Keller, and by extension MHNet, never gave Plaintiff any explanation other than referring Plaintiff back to Smith and, by extension, COG, then referencing Plaintiff's November 9, 2007 email and that "Plaintiff should consider an apology."

92.     On December 4, 2007, Plaintiff was forced to Molly Keller, and by extension MHNet a second time and informed Molly Keller, and by extension MHNet that she opposed this second effort, that it was a pre-text [for retaliation] carried on by a disaffected co-manager.

93.     As a consequence, Plaintiff requested that all communication with Molly Keller be in writing, for accurate documentation.

94.     Molly Keller, and by extension MHNet support of Smith was in itself a retaliation.

95.     In the support of Smith, Molly Keller, and by extension MHNet, breached its duty of care to Plaintiff as a COG employee, and a [potential] client, although Plaintiff did not voluntarily seek their services.

96. In the support of Smith, Molly Keller, and by extension MHNet displayed deliberate indifference for Plaintiff and her concerns.

97. As a consequence of incidents set forth, Plaintiff suffered damages and irreparable.

COUNT I
**SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
BASED ON ETHNICITY/NATIONAL ORIGIN VIOLATION OF 42 U.S.C. § 1981
CALVIN L.SMITH, SR.**

99. Plaintiff incorporates by reference all paragraphs above, as if set forth herein

99. Plaintiff is, and at all times relevant, a black female whose nation of origin is Nigeria.

100. Chapter 42 of the United States Code, Section 1981 as interpreted by the United States Supreme Court in *CBOCS West, Inc., v. Hedrick G. Humphrie*s, 553 U.S. 442 (2008), prohibits an employer from subjecting an employee to materially adverse actions as a result of that employee participating in a protected activity, such as opposing unlawful discrimination.

101. Calvin L. Smith Sr., engaged in intentional ethnic/national origin discrimination against Plaintiff, in violation of the provision of 42 U.S.C. §1981 by (a) treating an employee selectively and negatively in terms/conditions of employment; (b) denying employee benefits and privileges of contract and employment enjoyed by other similarly situation employees; (c) interfering with and right to make and enforce privileges and contractual benefits of his employment; and (d) depriving an employee of employment on the basis of his ethnicity/national origin.

102. Specifically, Smith subjected Plaintiff to sexual harassment by way of unwelcome advances and inappropriate behavior that made Plaintiff uncomfortable.

103. When Plaintiff proved non-responsive, Smith subjected her to negative treatment, altering the terms and conditions of her employment by (a) soliciting others employees to create problems for her in her work, (b) began to inform Plaintiff 's managers and colleagues that Plaintiff was having problems with coworkers, (c) punished Plaintiff by denying her work opportunities; and (d)

forced Plaintiff to move when she sought to complain; then (e) attempted to terminate her employment at Plaintiff 's six (6)month Intro ductory Appraisal; (f) created a "campaign of hostilities" against Plaintiff throughout the organization post her Introductory Appraisal that subjected her to acts of bullying, intimidation, isolation and (g) ostracizing her, then (h) attempted to commit her to counseling under a false an frivolous Mandatory EAP in November 2007 and December 2007under the threat of termination.

104.    Other similarly situated employees not of Plaintiff 's ethnicity/national origin were not subject to the same conditions of employment as Plaintiff

105.    Plaintiff is damaged as a result of this unlawful conduct. As a direct and proximate result of the Defendant 's conduct,the plaintiff has suffered,and continues to suffer,and will in the future suffer great emotional distress, economic damages, inconvenience, and other damages.

106.    Additionally, she suffered loss of income, loss of employment, loss of earning capacity, loss of employee benefits and their value, litigation expenses, fees, consequential damages, loss of employment opportunities, loss of business and development opportunities, and other injuries.

**COUNT II**
**RETALIATION**
**BASED ON ETHNICITY/NATIONAL ORIGIN VIOLATION OF 42 U.S.C. § 1981**
**CALVIN L.SMITH, SR.**

107.    Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

108.    Under Under 42 U.S.C. § 1981(a), "all persons . . . shall have the same right . . . to make and enforce contracts... and to the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship …." and prohibits an employer from engaging in discrimination by treating an employee selectively and negatively in terms/conditions of employment; denying employee benefits and privileges of contract and employment enjoyed by other similarly situation employees;

interfering with and right to make and enforce privileges and contractual benefits of his employment; and depriving an employee of employment basis of ethnicity/~~national origin~~.

109.    Smith individually, engaged in intentional ethnic/~~national origin~~ discrimination against Plaintiff, in violation of the provision of 42 U.S.C. §1981 by (a) targeting Plaintiff, (b) alleging she was homeless and an (c) undocumented immigrant; (d) isolating and ostracizing her, and (e) subjecting her to events and incidents that disrupted her ability to work; (f) denied her work opportunities, the benefits and privileges of contract and employment enjoyed by others, non-African (or African-American); (g) subjected her to a false and fabricated mandatory EAP process under the threat of termination; (h) interfered with her right to make and enforce privileges and contractual benefits of her employment; (i) terminated her, depriving her employment, on the basis of ethnicity/~~national origin~~.

110.    Other similarly situated employees not of Plaintiff 's ethnicity/~~national origin~~ were not subject to the same conditions of employment as Plaintiff and Plaintiff has been damaged as a result of the unlawful conduct of Defendant COG,its ' agent s/supervisors.

111.    As a direct and proximate result of the conduct of Defendant COG,its '
agents/supervisors, Plaintiff has suffered, and continues to suffer, and will in the future suffer great emotional distress, economic damages, inconvenience, and other damages.

112.    Additionally, Plaintiff suffered loss of income, loss of employment, loss of earning capacity, loss of employee benefits and their value, litigation expenses, fees, consequential damages, loss of employment opportunities, loss of business and development opportunities, and other injuries.

113.    Smith in victimizing Plaintiff, subjected her to selective and negative treatment,

alleging she was homeless and an undocumented immigrant; subjecting her to events and incidents that disrupted her ability to work; denying her work opportunities, the benefits and privileges of contract and employment; isolating/ostracizing her; interfering with her rights; subjecting her to a false and fabricated mandatory EAP process under the threat of termination; then depriving her of employment by termination was oppressive, interfered with her ability to contract with COG and other entities, and deprived her of the full and equal benefits of laws and proceedings

114.   Plaintiff suffered anguish, shock, helplessness, insult, embarrassment, humiliation, and other damages as a direct and proximate result of the actions of Defendant COG and its agents and supervisors.

115.   Smith injured Plaintiff irreparably in violation of 42 U.S.C. § 1981

**COUNT III**
**CALVIN L.SMITH, SR.**
**AT COMMON LAW TORTIOUS INTERFERENCE W/ECONOMIC ADVANTAGE**

116.   Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

117.   At all times relevant a valid business/employment relationship and expectancy existed between Plaintiff and the entity of COG

118.   Plaintiff had reason to believe that her employment would continue, notwithstanding the interference,harassment,retaliation and disruption by Smith and/or that Plaintiff 's employment and scope of responsibilities would continue, extend or expand, and that her good name would be maintained such that Plaintiff 's experience,skill,credi bility, integrity and reputation could remain intact, and Plaintiff remained employable, to pursue her endeavors.

119.   At all times relevant ,Smith was aware of Plaintiff 's relationships and expectancies.

120.   At all times relevant, Smith sought to maintain the benefits of his own relationships and expectancies, while denying the same to Plaintiff.

–18–

121.   Smith victimized Plaintiff in the course of her employment, employing a scheme of
retaliation thatdisrupted and later terminated Plaintiffs contractual relations [employment]
thereby terminating Plaintiff 's ex pectancies causing her injury and damages.

122.   As a consequence Plaintiff was injured, suffered irreparable harm and damages.

### COUNT IV (COMMON LAW)
### COMMON LAW FRAUD, DECEIT, MISREPRESENTATION IN EMPLOYMENT
### AS TO CALVIN L. SMITH, SR.

123.   Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

124.   On January 31, an offer of employment was made to Plaintiff by Janet Ernst and, by
extension COG, on behalf of Calvin L. Smith Sr.

125.   Plaintiff believed the offer to be a true representation, and accepted the offer for
employment and began her employment on February 13, 2006.

126.   However, in the course of employment, Plaintiff was targeted, victimized, harassed, by
Calvin L. Smith, including participation by Janet Ernst, other staff and managers.

127.   Additionally, Plaintiff was subjected to a false and frivolous Mandatory counseling, under
the threat of termination by Calvin L. Smith.

128.   Plaintiff believes Smith employed this process to improperly assert himself in some type of
relationship, from which to obtain control/access to Plaintiff's personal affairs.

129.   As a consequence, of the improper, egregious, and inappropriate conduct,including hostile
environment and retaliation, Plaintiff was prevented from the enjoyment of her employment, and
was terminated on March 11, effective March 31, 2008.

130.   Plaintiff was harmed and suffered damages both in her employment and beyond.

COUNT V (COMMON LAW)
VIOLATION OF D.C. CODE § 22-3704 BIAS MOTIVATED …INTIMIDATION
CALVIN L. SMITH, SR.

131    Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

132.    In subjecting Plaintiff to the injuries suffered and damages sustained, Smith

violated the provisions of this statute, which reads in part:

> [I]rrespective of any criminal prosecution or the result…any person who incurs injury to
> his or her person or property as a result of an intentional act that demonstrates an
> accused's prejudice…actual or perceived…national origin, sex, age, marital
> status…family responsibilities…or political affiliation of a victim of the subject
> designated act shall have a civil cause of action in a court of competent jurisdiction for
> appropriate relief. D.C. Code § 22-3704. Civil action [Formerly § 22-4004]

133.    As a consequence, Plaintiff was harmed and suffered damages both in her person, property,

and employment and beyond.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant:

a. All available relief and remedies permitted under 42 U.S.C. § 1981, including statutory

compensatory damages (pecuniary and non-pecuniary);

b. All available relief and remedies permitted under the state/common law for matters

arising under supplemental jurisdiction.

COUNT VI
RETALIATION
BASED ON ETHNICITY/NATIONAL ORIGIN VIOLATION OF 42 U.S.C. § 1981
AS TO CALVIN L. SMITH, SR. PAUL DESJARDIN, IMELDA ROBERTS,
JANET ERNST, AS TO EULALIE GOWER LUCAS, ABDUL MOHAMMAD

134.    Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

135.    Under 42 U.S.C. § 1981(a), "all persons . . . shall have the same right . . . to make and

enforce contracts... and to the enjoyment of all benefits, privileges, terms, and conditions of the

contractual relationship …." and prohibits an employer from engaging in discrimination by treating

an employee selectively and negatively in terms/conditions of employment; denying employee benefits and privileges of contract and employment enjoyed by other similarly situation employees; interfering with and right to make and enforce privileges and contractual benefits of his employment; and depriving an employee of employment basis of ethnicity/~~national origin~~.

States Supreme Court in *CBOCS West, Inc., v. Hedrick G. Humphries*, 553 U.S. 442 (2008), prohibits an employer from subjecting an employee to materially adverse actions as a result of that employee participating in a protected activity, such as opposing unlawful discrimination.

136.  ~~Smith Sr~~. DesJardin, Roberts, ~~Ernst, Lucas, and Mohammad~~, individually, collectively, and/or with others, engaged in intentional ethnic/~~national origin~~ discrimination against Plaintiff, in violation of the provision of 42 U.S.C. §1981 by (a) targeting Plaintiff, (b) alleging she was homeless and an (c) undocumented immigrant; (d) isolating and ostracizing her, and (e) subjecting her to events and incidents that disrupted her ability to work; (f) denied her work opportunities, the benefits and privileges of contract and employment enjoyed by others, non-African (or African-American); (g) subjected her to a false and fabricated mandatory EAP process under the threat of termination; (h) interfered with her right to make and enforce privileges and contractual benefits of her employment; (i) terminated her, depriving employment, on the basis of ethnicity/~~national origin~~.

137.  Other similarly situated employees not of Plaintiff 's ethnicity/~~national origin~~ were not subject to the same conditions of employment as Plaintiff and Plaintiff has been damaged as a result of the unlawful conduct of Defendant COG,its ' agent s/supervisors.

138.  As a direct and proximate result of the conduct of Defendant COG,its '
agents/supervisors, Plaintiff has suffered, and continues to suffer, and will in the future suffer great emotional distress, economic damages, inconvenience, and other damages.

139.  Additionally, Plaintiff suffered loss of income, loss of employment, loss of earning

capacity, loss of employee benefits and their value, litigation expenses, fees, consequential damages, loss of employment opportunities, loss of business and development opportunities, and other injuries.

140. ~~Smith Sr.~~ DesJardin, Roberts, ~~Ernst, Lucas, and Mohammad~~, individually,

collectively, and/or with others in targeting Plaintiff, subjected her to selective and negative treatment, alleging she was homeless and an undocumented immigrant; subjecting her to events and incidents that disrupted her ability to work; denying her work opportunities, the benefits and privileges of contract and employment; isolating/ostracizing her; interfering with her rights; subjecting her to a false and fabricated mandatory EAP process under the threat of termination; then depriving her of employment by termination was oppressive, interfered with her ability to contract with COG and other entities, and deprived her of the full and equal benefits of laws and proceedings

141. Plaintiff suffered anguish, shock, helplessness, insult, embarrassment, humiliation, and other damages as a direct and proximate result of the actions of Defendant COG and its agents and supervisors.

142. ~~Smith~~ injured Plaintiff irreparably in violation of 42 U.S.C. § 1981

### COUNT VII (COMMON LAW)
### TORTIOUS INTERFERENCE
### AS TO ~~CALVIN L. SMITH, SR.~~ PAUL DESJARDIN, IMELDA ROBERTS, ~~JANET ERNST, EULALIE GOWER LUCAS, ABDUL MOHAMMAD~~

143. Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

144. At all times relevant a valid business/employment relationship and expectancy existed between Plaintiff and the entity of COG.

145. Plaintiff had reason to believe that her employment would continue, notwithstanding the interference, harassment, retaliation and disruption by ~~Smith~~, DesJardin, Roberts, Ernst, ~~Gower Lucas, Bailey,and Mohammad~~ and/or that Plaintiff's employment and scope of responsibilities

would continue, extend or expand, and that her good name would be maintained such that Plaintiff's experience, skill, credibility, integrity and reputation could remain intact, and ~~Plaintiff remained employable, to pursue her endeavors.~~

146.    At all times relevant, ~~Smith,~~ DesJardin, Roberts, ~~Ernst, Gower Lucas, Bailey,~~and ~~Mohammad~~ was aware of Plaintiff's relationships and expectancies.

147.    At all times relevant, ~~Smith,~~ DesJardin, Roberts, ~~Ernst, Gower Lucas, Bailey,~~and ~~Mohammad~~ sought to maintain the benefits of his own relationships and expectancies, while denying the same to Plaintiff.

148.    ~~Smith~~ via his inappropriate behavior/conduct, victimizing Plaintiff in the course of her employment and the participation of DesJardin, Roberts, ~~Ernst, Gower Lucas, Bailey,~~and ~~Mohammad~~ contributed to Plaintiff's termination; disrupted and interfered with Plaintiff relationships and expectancies and caused Plaintiff economic harm in termination of her employment, loss of income, and subsequent other damages ~~including the inability to complete the renovation of her family property/business and the resulting loss of the asset as of December 2009.~~

149.    As a consequence of the intentional interference by Smith, DesJardin, Roberts, ~~Ernst, Gower Lucas, Bailey,~~and ~~Mohammad~~ Plaintiff incurred substantial loss, including the loss of any and all additional and future employment relations with COG, and ~~by extension other opportunities, private and governmental~~ due to the irreparable harm to Plaintiff's reputation.

~~**COUNT VIII (COMMON LAW)**~~
~~**VIOLATION OF D.C. CODE § 22-3704 BIAS MOTIVATED …INTIMIDATION**~~
~~**AS TO CALVIN L. SMITH, SR. PAUL DESJARDIN, IMELDA ROBERTS,**~~
~~**JANET ERNST, EULALIE GOWER LUCAS, ABDUL MOHAMMAD**~~

~~150.    Plaintiff incorporates by reference all paragraphs above, as if set forth herein.~~

~~151.    In subjecting Plaintiff to the injuries suffered and damages sustained, Smith violated the provisions of this statute, which reads in part:~~

[I]rrespective of any criminal prosecution or the result…any person who incurs injury to his or her person or property as a result of an intentional act that demonstrates an accused's prejudice…actual or perceived…national origin, sex, age, marital status…family responsibilities…or political affiliation of a victim of the subject designated act shall have a civil cause of action in a court of competent jurisdiction for appropriate relief. D.C. Code § 22-3704. Civil action [Formerly § 22-4004]

152.    As a consequence, Plaintiff was harmed and suffered damages both in her person, property, and employment and beyond.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant:

a. All available relief and remedies permitted under 42 U.S.C. § 1981, including statutory compensatory damages (pecuniary and non-pecuniary);

b. All available relief and remedies permitted under the state/common law for matters arising under supplemental jurisdiction.

## COUNT IX
## HOSTILE WORK ENVIRONMENT/DISPARATE TREATMENT
## BASED ON ETHNICITY/NATIONAL ORIGIN VIOLATION OF 42 U.S.C. § 1981
## AS TO COG

153.    Plaintiff adopts and incorporates by reference all paragraphs above, as if set forth herein

154.    Chapter 42 of the United States Code, Section 1981 as interpreted by the United States Supreme Court in *CBOCS West, Inc., v. Hedrick G. Humphrie*s, 553 U.S. 442 (2008), prohibits an employer from subjecting an employee to materially adverse actions as a result of that employee participating in a protected activity, such as opposing unlawful discrimination.

155.    Defendant COG and its agents/supervisors have individually, collectively, and/or with others engaged in a course of intentional retaliation against Plaintiff for opposition to illegal practices, all in violation of the provisions of 42 U.S.C. §1981.

156.    Plaintiff is damaged as a result of this unlawful conduct.

157.    As a direct and proximate result of the conduct, COG and its agents/supervisors, Plaintiff

has suffered, continues to suffer, and will in the future suffer great humiliation, distress,

inconvenience, pain, embarrassment, suffering, mental anguish, loss of enjoyment of life, injury,

and non-pecuniary damages, including damage to his reputation and good will.

158.    Additionally, she suffered loss of income, loss of employment, loss of earning capacity,

loss of employee benefits and their value, litigation expenses, fees, consequential damages, loss of

employment opportunities, loss of business and development opportunities, and other injuries

## COUNT X
## RETALIATION
## BASED ON ETHNICITY/~~NATIONAL ORIGIN~~ VIOLATION OF 42 U.S.C. § 1981
## AS TO COG

159.    Plaintiff adopts and incorporates by reference all paragraphs above, as if set forth herein.

160.    Under 42 U.S.C. § 1981(a), "all persons . . . shall have the same right . . . to make and

enforce contracts... and to the enjoyment of all benefits, privileges, terms, and conditions of the

contractual relationship …." and prohibits an employer from engaging in discrimination by treating

an employee selectively and negatively in terms/conditions of employment; denying employee

benefits and privileges of contract and employment enjoyed by other similarly situation employees;

interfering with and right to make and enforce privileges and contractual benefits of his

employment; and depriving an employee of employment basis of ethnicity/~~national origin~~.

Defendant COG and its agents/supervisors have individually, collectively, and/or with

others engaged in a course of intentional retaliation against Plaintiff for opposition to illegal

practices, all in violation of the provisions of 42 U.S.C. §1981.

161.    Plaintiff is damaged as a result of this unlawful conduct.

162.    As a direct and proximate result of the conduct, COG and its agents/supervisors, Plaintiff

has suffered, continues to suffer, and will in the future suffer great humiliation, distress,

inconvenience, pain, embarrassment, suffering, mental anguish, loss of enjoyment of life, injury,

and non-pecuniary damages, including damage to his reputation and good will.

163.    Additionally, she suffered loss of income, loss of employment, loss of earning capacity,

loss of employee benefits and their value, litigation expenses, fees, consequential damages, loss of

employment opportunities, loss of business and development opportunities, and other injuries

~~COUNT XI~~
~~DISCRIMINATION BASED ON GENDER/SEX, NATIONAL ORIGIN~~
~~VIOLATION OF TITLE VII 42 U.S.C. § 2000-e(2)~~
~~AS TO COG~~

164.    ~~Plaintiff adopts and incorporates by reference all paragraphs above, as if set forth herein~~

165.    ~~Chapter 42, Section 2000-e(2) of the United States Code prohibits an employer from~~

~~discriminating against an employee based on race, color, religion, sex, or national origin.~~

166.    ~~The acts of Defendant as set forth herein were willful, reckless, and malicious acts of~~

~~unlawful discrimination against Plaintiff,that were and are based on Plaintiff 's ethnic ity/national~~

~~origin.Defendant 's acts were and are in violation of the provisions of Title VII of the Civil Rights~~

~~Act of 1964, as amended, 42 U.S.C. 2000 et seq.~~

167.    ~~Other similarly situated employees not of Plaintiff 's ethnicity/national origin were not~~

~~subject to the same conditions of employment as Plaintiff.~~

168.    ~~The acts discriminatory treatment as set forth above by Defendant COG and its~~

~~agents/supervisors towards Plaintiff caused tangible harm in the course of Plaintiff 's employment,~~

~~affecting the terms, conditions and privileges of her employment.~~

169.    ~~Plaintiff also suffered anguish, helplessness, shock, insult, embarrassment, and other~~

~~Damages as a direct and proximate result of the actions of Defendant COG and its~~

~~agents/supervisors.~~

170.    ~~Plaintiff has additionally suffered loss of income, loss of employment, loss of earning~~

-27-

capacity, loss of employment, loss of employee benefits and their value, litigation expenses, fees, and consequential damages, including the loss of employment opportunities, business and development opportunities, and other injuries.

### COUNT XII
### RETALIATION GENDER/SEX, NATIONAL ORIGIN
### VIOLATION OF TITLE VII 42 U.S.C. § 2000e-3(a)
### AS TO COG

171.   Plaintiff adopts and incorporates by reference all paragraphs above, as if set forth herein

172.   Title VII of the Civil Rights Act of 1964 forbids an employer from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice " by Title VII,or the employee 's participation in "an investigation,proce eding, or hearing under [Title VII ]." 42 U.S.C.§ 2000e -3(a).

173.   Defendant COG and its agents/supervisors have individually, collectively, and/or with others engaged in a course of intentional retaliation against Plaintiff for opposition to illegal practices, all in violation of the provisions of 42 U.S.C. §2000.

174.   Plaintiff has been damaged as a result of the unlawful conduct of defendant COG, its agents/supervisors.

175.   As a direct and proximate result of the conduct of Defendant COG, its agents/supervisors, the plaintiff has suffered, continues to suffer, and will in the future suffer great humiliation, distress, inconvenience, pain, embarrassment, suffering, mental anguish, loss of enjoyment of life, injury, and non-pecuniary damages, including damage to reputation.

176.   Plaintiff has additionally suffered loss of income, loss of employment, loss of earning capacity,loss of employee benefits and their value,litigation expenses including any attorney 's fees, and consequential damages, loss of employment opportunities, loss of business and development opportunities, and other injuries.

## COUNT XIII
## DISPARATE TREATMENT UNDER THE ADEA
## AS TO COG

177.   Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

178.   Defendant COG and its agents/supervisors have individually, collectively, and/or with others discriminated against Plaintiff, in violation of the ADEA, by isolating and ostracizing her, not assigning her work, and depicting her as [old], troubled employee, while assigning her work to younger employees and providing them training.

179.   Defendant COG and its agents/supervisors have individually, collectively, and/or with others discriminated against Plaintiff, in violation of the ADEA, by subjecting her to a false and frivolous Mandatory counseling upon the threat of termination.

180.   Defendant COG and its agents/supervisors have individually, collectively, and/or with others discriminated against Plaintiff, in violation of the ADEA, by failing to consider her for open and available positions she sought to transfer, and later hired younger employees to fill those positions.

181.   Plaintiff is damaged as a result of this unlawful conduct and entitled to recover

## COUNT XIV
## RETALIATION UNDER THE ADEA
## AS TO COG

182.   Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

183.   Defendant COG and its agents/supervisors have individually, collectively, and/or with others retaliated against Plaintiff, in violation of the ADEA, by not considering her for open positions that were available for which she sought to transition/transfer.

184.   Defendant COG and its agents/supervisors have individually, collectively, and/or with

others retaliated against Plaintiff, in violation of the ADEA, by not considering her for these positions, subjecting her to a false and frivolous Mandatory counseling upon the threat of termination, then terminating her.

185.   Plaintiff is damaged as a result of this unlawful conduct and entitled to recover

### COUNT XV
### COMMON LAW FRAUD, DECEIT, MISREPRESENTATION IN EMPLOYMENT
### AS TO COG

186.   On January 31, an offer of employment was made to Plaintiff by Janet Ernst and, by extension COG, on behalf of Calvin L. Smith Sr.

187.   Plaintiff believed the offer to be a true representation, and accepted the offer for employment. Plaintiff began her employment on February 13, 2006.

188.   However, in the course of employment, Plaintiff was targeted, victimized, harassed, by Calvin L. Smith, including participation by Janet Ernst, other staff and managers.

189.   Additionally, Plaintiff was subjected to a false and frivolous Mandatory counseling, under the threat of termination by Calvin L. Smith.

190.   Plaintiff believes Smith employed this process to improperly assert himself in some type of relationship, from which to obtain control and access to Plaintiff's personal affairs and assets.

191.   As a consequence, of the improper, egregious, and inappropriate conduct, including hostile environment and retaliation, Plaintiff was prevented from the enjoyment of her employment, and was terminated on March 11, effective March 31, 2008.

192.   Plaintiff was harmed and suffered damages both in her employment and beyond.

### COUNT XVI
### AT COMMON LAW - NEGLIGENT...RETENTION/SUPERVISON
### AS TO COG

193.   Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

-30-

194. Plaintiff was an employee in good standing, performing her work responsibilities diligently and responsibly and had no performance problems, as reflected in her Appraisals (both 2006 and 2007).

195. COG, acting by and through its agents/representatives/employees, had a continuing duty to reasonably, secure services of qualified, well-trained agents, services and/or employees; reasonably hire, train, supervise and retain them.

196. COG, acting by and through its agents/representatives/employees had a continuing duty to reasonably, provide their duties and obligations, monitor and manage their employee.

197. COG, acting by and through its agents/representatives/employees breached these duties, subjecting Plaintiff to intentional harm, discrimination, retaliation, exhibiting deliberate indifference for Plaintiff's well being.

198. As a consequence Plaintiff was injured, and suffered irreparable harm.

### COUNT XVII
### VIOLATION OF D.C. CODE § 22-3704 BIAS MOTIVATED …INTIMIDATION AS TO COG

199. Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

200. In subjected Plaintiff to the injuries suffered and damages sustained, defendants violated the provisions of this statute, which reads in part:

> [I]rrespective of any criminal prosecution or the result…any person who incurs injury to his or her person or property as a result of an intentional act that demonstrates an accused's prejudice…actual or perceived…national origin, sex, age, marital status…family responsibilities…or political affiliation of a victim of the subject designated act shall have a civil cause of action in a court of competent jurisdiction for appropriate relief. D.C. Code § 22-3704. Civil action [Formerly § 22-4004]

201.  As a consequence, Plaintiff was harmed and suffered damages both in her person, property, and employment and beyond.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant:

a.  All available relief and remedies permitted under 42 U.S.C. § 1981, including statutory compensatory damages (pecuniary and non-pecuniary);

b.  All available relief and remedies permitted under the state/common law for matters arising under supplemental jurisdiction.

### COUNT XVIII
### MOLLY KELLER AND "MHNET "
### RETALIATION
### BASED ON ETHNICITY/NATIONAL ORIGIN VIOLATION OF 42 U.S.C. § 1981

202.  Plaintiff adopts and incorporates by reference all paragraphs above, as if set forth herein.

203.  Under 42 U.S.C. § 1981(a), "all persons . . . shall have the same right . . . to make and enforce contracts... and to the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship …." and prohibits an employer from engaging in discrimination by treating an employee selectively and negatively in terms/conditions of employment; denying employee benefits and privileges of contract and employment enjoyed by other similarly situation employees; interfering with and right to make and enforce privileges and contractual benefits of his employment; and depriving an employee of employment basis of ethnicity/national origin. Defendant COG and its agents/supervisors have individually, collectively, and/or with others engaged in a course of intentional retaliation against Plaintiff for opposition to illegal practices, all in violation of the provisions of 42 U.S.C. §1981.

204.  Plaintiff is damaged as a result of this unlawful conduct.

205.  As a direct and proximate result of the conduct, COG and its agents/supervisors, Plaintiff

has suffered, continues to suffer, and will in the future suffer great humiliation, distress, inconvenience, pain, embarrassment, suffering, mental anguish, loss of enjoyment of life, injury, and non-pecuniary damages, including damage to his reputation and good will.

206. Additionally, she suffered loss of income, loss of employment, loss of earning capacity, loss of employee benefits and their value, litigation expenses, fees, consequential damages, loss of employment opportunities, loss of business and development opportunities, and other injuries

COUNT XIX
AT COMMON LAW - NEGLIGENT …RETENTION/SUPERVIS ION
AS TO MOLLY KELLER AND "MHNET "

207. Plaintiff incorporates by reference all Part I paragraphs, as if set forth herein.

208. Plaintiff was an employee in good standing, performing her responsibilities diligently, responsibly, had no performance problems, as reflected in her Appraisals (both 2006 and 2007).

209. MHNET, acting by and through Molly Keller, its agents/representatives/employees, had a continuing duty to secure the services of qualified, well-trained agents, services and/or employees; reasonably hire, train, supervise and retain them.

210. MHNET, acting by and through Molly Keller, its agents/representatives/employees had a continuing duty to reasonably, provide their services and obligations.

211. MHNET, acting by and through Molly Keller, its agents, representatives and/or employees breached these duties, exhibited deliberate indifference, subjecting Plaintiff to intentional discrimination, and retaliation, by their efforts in furtherance of the fabricated and false November 13, 2007 Mandatory EAP Memo by Smith.

212. MHNET, acting by and through Molly Keller, its agents, representatives, exhibited inadequacy in its supervision, training, of its agents/representatives; lack of cultural competence

-33-

for ethnic populations, and inability to manage, control its agents/representative in provision of its services.

213. As a consequence Plaintiff was injured, and suffered irreparable harm.

### COUNT XX
### AT COMMON LAW – NEGLIGENCE
### MOLLY KELLER AND "MHNET "

214. Plaintiff incorporates by reference all paragraphs above, as if set forth herein.

215. Molly Keller 's and,by extension,MHNET owed a duty to Plaintiff .

216. By their conduct/behaviour,as set forth above,Molly Keller 's and,by extension, MHNET, through its agents, and/or employees, breached this duty, by their efforts in furtherance of the fabricated and false November 13, 2007 Mandatory EAP Memo by Smith.

217. Additionally, the efforts Molly Keller 's and,by extension,MHNET made at the request of Calvin L. Smith Sr. in a second attempt to subject her to the same process as outlined in the December 4, 2007 Memo of Smith, was reckless and made with malice.

218. As a consequence Plaintiff was injured, and suffered irreparable harm.

### COUNT XXI
### AT COMMON LAW - TORTIOUS INTERFERENCE W/ECONOMIC ADVANTAGE
### MOLLY KELLER AND "MHNET "

219. At all times relevant, a valid business/employment relationship and expectancy as to future employment existed between Plaintiff and the entity of COG.

220. Plaintiff had reason to believe that her employment would continue, notwithstanding the interference and disruption in the efforts made by Molly Keller and, by extension MHNET, in furtherance of the fabricated and false November 13, 2007 Mandatory EAP Memo by Smith.

221. At all times relevant,Molly Keller and,by extension MHNET,were aware of Plaintiff 's relationships and expectancies in employment.

-34-

222. At all times relevant, Molly Keller and, by extension, MHNET, by their participation, sought to maintain their relationships and expectancies while denying Plaintiff the same.

223. Particularly, the second attempted referral on December 3, 2007, outlined in the

224. As a consequence Plaintiff was injured, suffered irreparable harm and damages.

### PRAYER FOR RELIEF

**WHEREFOR**E, Plaintiff prays that this Court grant:

a. All available relief and remedies permitted under 42 U.S.C. § 1981, including statutory compensatory damages (pecuniary and non-pecuniary);

b. All available relief and remedies permitted under the state/common law for matters arising under supplemental jurisdiction.

Respectfully submitted,

Dated: March __9__ 2012

By:_____

Chinyere Uzoukwu (aka *Chinyere C. Uzoukw*u), Plaintiff, *pro se*
10105 Towhee Ave, Adelphi, MD 20783
**Phon**e: 301-445-0377/**E-mai**l: legalstuff.matters@gmail.com