IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CHINYERE UZOUKWU**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-cv-391 (RLW) |
| | ) | |
| | ) | |
| **METROPOLITAN** | ) | |
| **WASHINGTON COUNCIL OF** | ) | |
| **GOVERNMENTS, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This is the undersigned's third Memorandum Opinion in this action, which was brought by *pro* se Plaintiff Chinyere Uzoukwu. *See Uzoukwu v. Metro. Wash. Council of Govts.*, 845 F. Supp. 2d 168 (D.D.C. 2012); *Uzoukwu v. Metro. Wash. Council of Govts.*, Civil Action No. 11-cv-391 (RLW), ___ F. Supp. 2d ___, 2013 WL 5425128 (D.D.C. Sept. 30, 2013). The prior opinions spell out the procedural history of this action, including dismissal of Plaintiff's lawsuit and the subsequent reinstatement of several claims after reconsideration of two post-judgment motions. Presently, this action involves Plaintiff's former employer, Metropolitan Washington Council of Governments ("COG"), and her former co-workers: supervisor Calvin L. Smith (African-American), supervisor Paul DesJardin (Caucasian), and Director of Human Resources, Imelda Roberts (race unspecified). The following claims survived after this Court granted Plaintiff post judgment relief and allowed her to amend her complaint:

Count I   Section 1981 - Hostile Work Environment (Smith)
Count II  Section 1981 – Retaliation (Smith)
Count III Tortious Interference With Economic Advantage (Smith)
Count VI  Section 1981 – Retaliation (DesJardin & Roberts)

1

| | |
|---|---|
| Count VII | Tortious Interference (DesJardin & Roberts) |
| Count IX | Section 1981 – Hostile Work Environment/Disparate Treatment (COG) |
| Count X | Section 1981 – Retaliation (COG) |
| Count XVI | Negligent Retention/Supervision |

(*See* Doc. 52.) Defendants now seek dismissal of these claims, (Doc. 53), and Plaintiff requests leave to further amend her complaint. (*See* Doc. 56, Pl's Resp. at 2, 3, 4 n.1, 11, 12-13, 16, 21.) On December 12, 2013, a hearing was held on these matters. For the reasons set forth below, the Court will deny Plaintiff's request and grant Defendants' motion in part.

## I. ANALYSIS

### A. <u>Section 1981 Statute of Limitations</u>

Relying on *Carney v. American University*, 151 F.3d 1090, 1096 (D.C. Cir. 1998), the Defendants argue that a three-year statute of limitations applies to Plaintiff's Section 1981 claims. In *Carney*, our Circuit explained:

> For statute of limitations purposes, the Supreme Court treats section 1981 claims like claims under 42 U.S.C. § 1983. *See Goodman,* 482 U.S. at 660-62, 107 S. Ct. 2617 (applying the rule that courts should look to state personal injury statutes to determine the appropriate statute of limitations for section 1983 claims, . . . to section 1981 claims). . . . The Supreme Court has held that in states with multiple statutes of limitations, claims under section 1983 are governed by the residual or general personal injury statute of limitations . . . rather than the statute of limitations for enumerated intentional torts. . . . Accordingly, [in the District of Columbia] section 12-301(8)'s three-year statute of limitations applies to all section 1981 claims.

151 F.3d at 1096 (some citations omitted).

By relying on *Carney*, Defendants ignore the four-year federal default statute of limitations,[1] the 1991 amendments to Section 1981[2] and the Supreme Court's post-*Carney* decision in *Jones v.*

---

[1] "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

*R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). In *Donnelley* the Supreme Court held that Section 1981 claims relating to contract <u>formation</u> are still governed by the appropriate state limitations period, but Section 1981 claims based on <u>post-contract formation</u> conduct are governed by the federal four-year limitations period. *Id*. at 378-79, 382-83 (emphasis added).

Consistent with *Donnelley*, the four-year limitations period applies to the claims in the present case, which are based on alleged conduct that occurred during Plaintiff's employment. Accordingly, Plaintiff's Section 1981 claims are timely. On March 11, 2008 COG notified Plaintiff that she would be terminated and on March 31, 2008 her employment was terminated. (Amend. Compl. ¶ 88.) Less than four years later, Plaintiff filed her initial complaint, on February 16, 2011, and her first proposed amended complaint on June 17, 2011. (*See* Docs. 1; 21-3.) The proposed amended complaint included a Section 1981 claim. (*See* Doc. 21-3.) Even if one adopts the position of the Defendants that the appropriate marker is March 9, 2012, the date of Plaintiff's last proposed amended complaint, her claims are still timely. Thus, Defendants' timeliness arguments are without merit.

**B.**     <u>**Section 1981 claims: ethnicity vs. national origin**</u>

Next, Defendants argue that Plaintiff's Section 1981 claims are not actionable because she alleges discrimination based on national origin, rather than ethnicity. Defendants note that Plaintiff mentions "nation of origin" in her complaint, but Defendants contend she does not make any

---

[2] "Make and enforce contracts" defined

> For purposes of this section, the term "make and enforce contracts" includes the making, <u>performance</u>, <u>modification</u>, and <u>termination</u> of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b)(emphasis added).

allegations based on "racial or ethnic characteristics associated with the national origin in question." *See Wesley v. Howard Univ.*, 3 F. Supp. 2d 1, 3 (D.D.C. 1998)(citing *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). Defendants also contend that Plaintiff has not made any allegation that Defendants were aware of her ethnicity.

While the Supreme Court has made it clear that claims based "solely" on "national origin" may not proceed under Section 1981, claims based on color, race and/or ethnicity are actionable under Section 1981.[3] *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 287 (1976) (explaining that Section 1981 was enacted to protect persons of "every race and color."); *St. Francis College*, 481 U.S. 604 (discussing ancestry and ethnicity claims). With respect to claims based on "ancestry or ethnic characteristics," the Court in *St. Francis College v. Al-Khazraji* explained that

> § 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens." It is clear . . . , however, that a distinctive physiognomy is not essential to qualify for § 1981 protection.

*Id*. at 613 (emphasis in original)(citations omitted).

Given the Supreme Court precedent, at this juncture, dismissal of this action is not justified. In her complaint, Plaintiff identifies herself as "a black female . . . whose nation of origin is Nigeria. . . . Plaintiff was born in the west-African country of Nigeria, is a naturalized citizen of the United States and identifies herself as Black, and (African/Nigerian) Nigerian-American." (Amend. Comp. ¶¶ 7-8)(emphasis added). She goes on to discuss various incidents involving herself and "white"

---

[3] Section 1981 provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42. U.S.C. § 1981(a).

4

female employees (she does not describe them as "American" employees) and how Smith allegedly treated these other employees more favorably than she. (*See id.* ¶¶ 30, 32-36, 44-47, 53.) Plaintiff also alleges that she was the victim of "intentional ethnic/origin discrimination" and that she was denied work opportunities and privileges "enjoyed by others, non African (or African-American)." (*Id.* ¶ 136.)

While there may be some overlap between claims based on national origin and claims based on protected status under Section 1981, any potential overlap does not disqualify a Plaintiff from going forward under Section 1981. *See St. Francis College*, 481 U.S. at 614 (Brennan, J., concurring) ("It is true that one's ancestry-the ethnic group from which an individual and his or her ancestors are descended-is not necessarily the same as one's national origin-the country 'where a person was born, or, more broadly, the country from which his or her ancestors came.' Often, however, the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group.")(citations omitted); *Hyman v. First Union Corp.*, 980 F. Supp. 46, 52-53 (D.D.C. 1997) (dismissing plaintiff's Section 1981 claims were she alleged discrimination based on "national origin" and she compared her treatment with that "received 'by persons with origins in the United States,'" but noting that some courts have allowed claims to proceed where an "allegation of race discrimination is [also] reasonably inferable from the pleadings.")(citation omitted); *Ekandem v. D.C.*, Civ. A. No. 91-1060 (LFO), 1992 WL 138991, at *2 (D.D.C. Apr. 13, 1992)(denying, without prejudice, a motion to dismiss where the *pro se* plaintiff's complaint "repeatedly" referred to "national origin" as the reason for the alleged discrimination, but also referred "at several other points" to his status "as an African and a black"); *Walker v. Sec. of Treas*, 713 F. Supp. 403, 407-8 (N.D. Ga. 1989) (allowing claim by black plaintiff over alleged discrimination by black supervisor and noting that there "are sharp and distinctive contrasts among

5

native black African peoples (sub-Saharan) both in color and physical characteristics"). This is not a case like *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 264, 269-70, 274-75 (D.D.C. 2011), where the plaintiff identified himself in his complaint as a "black male from Angola" and made "occasional reference[s]" to race and discrimination against persons of "African descent," or persons who were "foreign nationals," but did not identify the races of the alleged perpetrators or those who were similarly situated.

C. **Section 1981: Intentional Discrimination**

Defendants disingenuously argue that Plaintiff makes no allegation and cannot make the requisite showing that the alleged wrongful conduct of Defendants was intentional. Plaintiff alleges that Smith, DesJardin and Roberts "individually, collectively and/or with others, engaged in intentional ethnic/national origin discrimination against Plaintiff . . . by . . . deny[ing] her work opportunities, the benefits and privileges of contract and employment enjoyed by others. . . ." (Amend. Compl. ¶ 136.) Plaintiff also alleges that "COG and its agents/supervisors have individually, collectively, and/or with others engaged in a course of intentional retaliation against Plaintiff for opposition to illegal practices . . . ." (Amend. Compl. ¶ 160.) Plaintiff need not pled more than this, along with her specific factual allegations of disparate treatment, in order to survive a motion to dismiss. She has done more than provide "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" for intentional discrimination. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(discussing motion to dismiss standard).

D. **Section 1981: Hostile Work Environment**

With respect to Plaintiff's hostile work environment claim, Defendants argue Plaintiff has not alleged that COG knew or should have known of the alleged harassment and she has not shown

6

that she exercised reasonable care to prevent the challenged conduct because she failed to complain. Defendants note that Plaintiff admittedly "aborted" any attempts to pursue an EEO complaint.

In *Curry v. District of Columbia*, 195 F.3d 654, 659 (D.C. Cir. 1999), our Circuit explained that different standards are applicable when evaluating co-worker harassment and supervisor harassment. A "negligence standard governs employer liability for co-worker harassment." *Id*. (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 799-801 (1998)). Under that negligence standard, the employer is liable if, *inter alia*, "it knew or should have known of conduct and failed to take proper remedial action." *Curry*, 195 F.3d at 659 n.10 (citing *Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 987 (8th Cir.1999)).

In contrast, a vicarious liability standard applies to cases involving supervisor harassment. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577-78 (D.C. Cir. 2013). In other words, "supervisors are treated as the employer's proxy" and, therefore, the employer is

> liable for the supervisor's actions, except when no tangible adverse employment action has been taken and the employer proves an affirmative defense: (i) that it exercised reasonable care to prevent and promptly correct the hostile behavior, and (ii) that the employee unreasonably failed to take advantage of the employer's preventive or corrective opportunities. [FN2]

> FN2. Some courts continue to cite the test articulated by the Eleventh Circuit in *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982). That case required an employee in a case where the employee was harassed by a supervisor to prove that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action." *Id.* That is no longer the test after *Faragher.*

*Id*. (citing *Faragher*, 524 U.S. at 789) (emphasis added).

Here, Plaintiff's allegations satisfy both tests. First, she alleges harassment by supervisors that culminated in an adverse employment action in the form of her termination. To the extent

7

Plaintiff can prove these allegations, she can prevail. Thus, the supervisor harassment claims must go forward.

Second, as discussed below, Plaintiff also alleges wide-spread harassment by co-workers and that she "initiated" discussions with EEO representatives, rather than discussions with generic non-EEO managers. At this stage of the litigation, all of these facts taken together are sufficient to state a claim that COG knew or should have known of the alleged co-worker harassment, but failed to take corrective action.

Defendants' next challenge whether the incidents about which Plaintiff complains amount to actionable harassment. Specifically, Defendants argue that Plaintiff has not set forth facts that would establish she experienced a workplace that was "permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1933) (internal quotation marks and citations omitted). According to Defendants, Plaintiff complained of a "handful of incidents over a period of approximately two years," "those incidents were not in any way linked to her protected status," and any challenged conduct amounted to "simple teasing."

Viewing Plaintiff's allegations in the light most favorable to her, as this Court must, *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994), Plaintiff has alleged that Defendants

> harassed and/or retaliated against her based on her ethnicity by denying her work opportunities, subjecting her to "events and incidents that disrupted her ability to work," accusing her of inappropriate work conduct, isolating and ostracizing her, alleging she was homeless, alleging that she was an undocumented immigrant, subjecting her to a "false and fabricated mediatory [sic] EAP process under the threat of termination," and terminating her. (S*ee* Amend. Compl. ¶¶ 104, 109–10, 113, 136, 140.)

*Uzoukwu*, 2013 WL 5425128, at * 14. Additionally, Plaintiff alleges that Defendants' "bull[ied] and intimidat[ed]" her, that her co-workers would "walk to her office, laugh, stare, then quickly move away," that she was cast in a "false light as a troublemaker who d[id not] do her work," and that her supervisors made false allegations against her "implying that [she] was in need of counseling." (Amend. Compl. ¶¶ 60, 64-65, 74, 80, 136.) An argument that these allegations constitute harmless teasing or isolated incidents does not pass muster and Defendants have not pointed to any cases that would factually support dismissal of Plaintiff's claims at this juncture.

### E. Section 1981: Retaliation

In order to make out a claim for retaliation, a Plaintiff must establish that: (1) she engaged in protected activity; (2) that she was subjected to an adverse employment action as a result of her protected activity; and (3) there was a causal connection between the adverse action and the protected activity. *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). Defendants lodge three attacks against Plaintiff's retaliation claim.

First, Defendants contend Plaintiff has admitted that she elected not to engage in protected activity and, therefore, she does not meet the first prong of the test.

> To qualify as protected activity under § 1981, a disclosure must complain about "a practice that the employee reasonably and in good faith believed was unlawful under § 1981. *McGrath v. Clinton,* 666 F.3d 1377, 1380 (D.C. Cir. 2012). "Not every complaint garners its author protection under § 1981." *Broderick v. Donaldson,* 437 F.3d 1226, 1232 (D.C. Cir. 2006). For example, "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC,* 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007).

*Bowyer v. District of Columbia*, 910 F. Supp. 2d 173, 209 (D.D.C. 2012) (alterations omitted).

In the present case, Plaintiff alleges that she "initiated discussions" in June 2006 with an EEO representative, but terminated them after "she discovered the supposedly 'confidential'

9

conversations" were shared with DesJardin (one of her supervisors) and "with her Introductory Appraisal, she would be terminated or placed on extended probation." (Amend. Compl. ¶ 52.) Plaintiff also alleges that in April 2007, she "inquired into the internal/external EEO grievance process again," but "after having her inquiry mischaracterized and the continued incidents of bullying and intimidation intensifying," she "aborted this second attempt." (*Id.* ¶ 65.)

Based on these facts, in a prior opinion this Court observed that it was not

> persuaded by COG's argument that Plaintiff did not engage in protected activity. . . . Both formal and informal complaints of discrimination have been recognized as "protected activity" for purposes of allowing a retaliation claim to go forward on a dispositive motion. *See Brooks v. Clinton,* 841 F. Supp. 2d 287, 304 (D.D.C. 2012) (citations omitted). Further, Plaintiff essentially alleges that her efforts to engage in protected activity were sabotaged by her employer.

*Uzoukwu,* 2013 WL 5425128, at *15.[4]

Nothing has changed since that opinion was issued. Perhaps later, Defendants can establish that Plaintiff did not engage in "protected activity" because her communications with the EEO representatives were too "ambiguous." However, at this juncture, the Defendants have not established that Plaintiff fails to state a claim for relief.

Next, Defendants attack Plaintiff's retaliation claim by arguing that she has not alleged she suffered any adverse employment action, other than the "layoff," and she has failed to allege facts that might establish a causal connection between the alleged protected activity and her "layoff." Defendants contend there is no sufficient temporal proximity between Plaintiff's 2006 and 2007 instances of alleged protected activity and her departure from COG in March 2008.

---

[4] In her response, Plaintiff also contends she contacted HR on November 13, 2007, regarding Smith, a November email and his attempts to force her into counseling. (Amend. Compl. ¶¶ 77-79.) The nature of her communications with HR are unclear.

10

This argument ignores all of the incidents Plaintiff alleges occurred between the time she engaged in protected activity and the time of her termination. "To prove retaliation, a plaintiff must demonstrate either that she has suffered an adverse employment action or that she has been subjected to a hostile work environment." *Floyd v. Lee*, Civil Action 11–1228 (RC), ___ F. Supp. 2d ___, 2013 WL 5429265, at *17 (D.D.C. Sept. 20, 2013) (*citing McGrath v. Clinton,* 666 F.3d 1377, 1379–81 (D.C. Cir. 2012); *Hussain v. Nicholson,* 435 F.3d 359, 366 (D.C. Cir. 2006)).

In the present case, Plaintiff alleges that prior to her termination she endured retaliation in the form of a hostile work environment. Specifically, Plaintiff alleges that after she contacted an EEO officer, in June 2006, that the next month she returned to find her telephones and computer disconnected before her new office was cleaned out and, the following month in August 2006, during the course of her Performance Appraisal, she was informed by Smith and DesJardin that they had approval from Human Resources ("HR") to terminate her. (Amend. Compl. ¶¶ 52-54.) According to Plaintiff, the supervisors claimed she had not done any work, shown initiative, creativity or an outgoing attitude. (*Id*. ¶ 54.) Although the performance evaluation matter was ultimately resolved, she claims Smith drafted a memo the following month, September 2006, falsely alleging that she was in need of counseling. (*Id*. ¶ 60.) Plaintiff further alleges that, as a result of the appraisal incident, she was left in total isolation. (*Id*. ¶ 61.)

It appears that the next major incident occurred about eight months later, around April 2007, when she had a run-in with an Ethiopian co-worker. Plaintiff complained to her supervisors who responded by "creat[ing] more hostility around Plaintiff, [and] casting Plaintiff in a false light as a troublemaker who doesn't do her work." (*Id*. ¶¶ 63-64)(emphasis added). That same month, Plaintiff "inquired into the internal/external EEO grievance process again," but "after having her

11

inquiry mischaracterized and the continued incidents of bullying and intimidation intensifying," she "aborted this second attempt." (Amend. Compl.¶ 65.)

In August of the same year, Plaintiff claims she had an "incident" with a co-worker in the office kitchen "which caused [her] to be burned with hot water." (*Id*. ¶ 72.) After Plaintiff complained, her supervisors and HR "employed this incident to mischaracterize and use against" her. (*Id*. ¶ 73.) By this point, she rarely left her office, and "employees would walk past her office, laugh, stare, then quickly move away." (*Id*. ¶ 74.) Plaintiff also claims someone broke into her office and removed items, including her performance appraisal, which was located in a locked file cabinet. (*Id*. ¶ 75.) Several months later, in October 2007, she decided to "just go along with this 'unspoken joke' about her being homeless and an undocumented immigrant" by apparently sending one or more emails on or about Halloween. (*Id*. ¶¶ 76, 80.) The following month Smith used one of Plaintiff's emails to threaten her with termination and subject her to a "frivolous Mandatory EAP as a condition of continued employment." (*Id*. ¶ 77.) When she contacted HR about the matter, "[t]hey" supported Smith. (*Id*. ¶ 79.) That same day, Smith authored a memo in which he accused plaintiff of "inappropriate conduct" because of the emails and because Plaintiff had purportedly missed a meeting without permission, although she claims she "had leave." (*Id*. ¶ 80.) The following month, Smith, DesJardin and an HR employee attempted to subject Plaintiff to mandatory counseling. (*Id*. ¶ 84). The last incidents occurred in late fall 2007 and Plaintiff was terminated in March 2008. In addition to the above allegations, Plaintiff alleges that Defendants isolated her and disrupted her ability to work. (*Id*. ¶ 136.)

Thus, at the very least, Plaintiff asserts on-going harassment after her second EEO contact that continued until her termination. Plaintiff has no obligation to spell out each and very incident of alleged retaliatory harassment to survive a motion to dismiss. Thus, Defendants' arguments that

she has not established adverse employment actions, outside of her termination, or a temporal causal connection between her protected activity and her termination are without merit.

Finally, Defendants argue Plaintiff's retaliation claim fails because she has not identified who made the decision to terminate her position and, therefore, she has not set forth facts that might establish the ultimate decision maker was aware of any protected activity. Defendants note that Smith left his employment with COG in January 2008 and Plaintiff was not terminated until roughly two months later in March.

Again Defendants' arguments fail. With respect to Smith, in a prior opinion the undersigned noted the apparent discrepancy in Plaintiff's allegations regarding her termination and Smith. *Uzoukwu*, 2013 WL 5425128, at *15 n.20. However, because termination was only one of many discriminatory acts allegedly carried out by Smith, the undersigned left the termination issue, as it relates to Smith, for another day. *Id*.

With respect to DesJardin and Roberts, Plaintiff has clearly asserted facts that would support her retaliation claim. Plaintiff asserts that her discussions with an EEO representative were "relayed back" to DesJardin, who threatened her with termination shortly thereafter and engaged in other alleged acts of retaliation. (*See, e.g.,* Amend. Compl. ¶ 52.) She also makes allegations that Roberts lied about Plaintiff signing the disputed performance appraisal and that Roberts, along with others, terminated Plaintiff and participated in the alleged harassment. (Amend. Compl. ¶¶ 54-58, 136, 140.) Finally, Plaintiff claims she contacted "Human Resources" about certain maters after her second contact with an EEO representative, but they supported Smith. (Amend. Compl. ¶¶ 77-79.) Although Plaintiff does not specifically allege that Roberts was aware of the protected activity, a reasonable fact finder could determine she was, given her position as Director of HR.

While it is unclear the extent to which DesJardin or Roberts made the final decision to terminate Plaintiff, her allegations are sufficient to survive a motion to dismiss. Even if the final decision maker was unaware of Plaintiff's protected activity, to the extent Plaintiff can establish that DesJardin and/or Roberts held retaliatory animus and one or both of them influenced the final decision maker, Plaintiff can establish retaliation. *See Hampton v. Vilsack*, 685 F.3d 1096, 1099, 1101-2 (D.C. Cir. 2012) (citing *Staub v. Proctor Hosp.*, ___ U.S. ___, 131 S. Ct. 1186, 1192-3, 179 L.Ed.2d 144 (2011)).

F.  **Tortious Interference and Negligent Retention/Supervision Claims**

Defendants note that an essential element of a tortious interference with contract claim is "the existence of a contract." *Casco Marina Dev., L.L.C. v. D.C. Redevelopment Land Agency,* 834 A.2d 77, 83 (D.C. 2003) (citations omitted). Because Plaintiff was an at-will employee, Defendants argue she cannot demonstrate she had an employment contract (either expressed or implied) and therefore her tortious interference claim fails. Without that claim, Plaintiff has no tort claim upon which to support her negligent retention/supervision claim and, therefore, it must also be dismissed according to Defendants. The Court will grant Defendants' motion with respect to Plaintiff's state law claims, but not for the reasons upon which Defendants rely.

Although Defendants' argument seems logical, as the undersigned pointed out in a prior opinion, there is precedent for allowing at-will employees to pursue claims for tortious interference under District of Columbia law. *See Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 286, 290-91 (D.C. 1989) (cited in *Uzoukwu*, 2013 WL 5425128, at *16). The District of Columbia court in *Sorrells v. Garfinckel's* allowed a former at-will employee to sue a supervisor for tortious interference because the latter was not an "alter ego of the corporation" and, therefore "was not a party to the contract between" the at-will plaintiff and the employer. 565 A.2d

14

at 290-91 (emphasis added) (citing *Wagenseller v. Scottsdale Memorial Hospital,* 710 P.2d 1025, 1041-1044 (Ariz. 1985) (rejecting defendant's argument that "there can be no wrongful interference with an at-will employment contract" because the "employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion" of third parties), *superseded by statute on other grounds as stated in Powell v. Washburn,* 125 P.3d 373 (Ariz. 2006)); *McManus v. MCI Communications Corp.*, 748 A.2d 949, 957-58 (D.C. 2000) (rejecting at-will employee's "prospective advantage" claim against the former employer, but noting that a claim against the individual defendant employees might survive summary judgment if plaintiff alleged that the individuals "procured a discharge of the plaintiff for an improper or illegal purpose."). Moreover, at least one court has recognized that "[i]t is well settled that the District of Columbia views at-will employment as a species of contract." *See Sheppard v. Dickstein, Shapiro, Morin and Oshinsky*, 59 F. Supp. 2d 27 (D.D.C. 1999)(citing *Carl v. Children's Hosp.*, 702 A.2d 159, 162 (D.C. 1997) ("This court has long and consistently adhered to the rule that employment is presumed to be at will, unless the contract of employment expressly provides otherwise"))(some citations omitted).

While some subsequent District of Columbia cases appear to conflict with *Sorrells*[5] and its continued viability has been challenged,[6] it has not been overruled. The undersigned need not attempt to resolve this conflict at this juncture, however, because the Plaintiff here has asked that

---

[5] *See Bible Way Church v. Beards*, 680 A.2d 419, 423-24, 432. (D.C. 1996) (rejecting at-will employee's tortious interference claim against Church Pastor and Board of Trustees ); *Futrell v. Dept. of Labor Fed. Credit Union*, 816 A.2d 793, 807 (D.C. 2003) (rejecting at-will employee's tortious interference claim against a credit union board president and the credit union's bonding company).

[6] *Dale v. Thomason*, 962 F. Supp. 181, 183-84 (D.D.C. 1997) (Greene, J.) (discussing the analysis in *Sorrells* and rejecting its holding based on subsequent authority); *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 24 (D.D.C. 2002) (Hogan, J.) (relying on *Dale* and rejecting *Sorrells* based on subsequent authority).

her state law claims be dismissed. (Doc. 56, Pl.'s Resp. at 3.) At the hearing on this matter, Plaintiff did not indicate she wished to withdraw this request. As such, the Court will grant Defendants' motion with respect to the state law claims.

### G. Plaintiff's Requests to Further Amend her Complaint

Plaintiff now wishes to combine certain claims and add, or in her words "designate" certain other claims. (*See* Doc. 56, Pl.'s Resp. at 2, 3, 4 n.1, 11, 12-13, 16, 21.) Any reorganization of Plaintiff's complaint is unnecessary and her "designation" of claims essentially amounts to an amendment. (*See id*. at 4 n.1.) The Court has been more than patient with the Plaintiff, who has attempted to file at least six amended complaints in this action. *See Uzoukwu*, 2013 WL 5425128, at *11-12; (Doc. 41). She has had sufficient opportunities to refine her claims and allowing further amendment at this juncture would not serve the interests of justice. *See Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir.1996) (noting that "futility" of the amendment or "repeated failure to cure deficiencies by previous amendments" may justify denying a motion to amend the complaint under Rule 15(a))(alterations omitted).

## II. CONCLUSION

For foregoing reasons, the Court will deny Plaintiff's request to amend her complaint and the Court will grant Defendants' motion to dismiss Plaintiff's state law claims. In all other respects Defendants' motion will be denied.

_____
ROBERT L. WILKINS
United States District Judge

SO ORDERED.
Date: January 21, 2014