UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHINYERE UZOUKWU**,<br><br>  Plaintiff,<br><br>  v.<br><br>**METROPOLITAN WASHINGTON COUNCIL OF GOVERNMENTS, et al.**,<br><br>  Defendants. | Case No. 11-cv-00391 (CRC) |

## MEMORANDUM OPINION

On September 18, 2015, the Court granted in part and denied in part Defendants' motion for summary judgment in this employment-discrimination action against the Metropolitan Council of Governments ("COG") and three of its executives. See Uzoukwu v. Metro. Wash. COG, 2015 WL 5541578 (D.D.C. Sept. 18, 2015) (Mem. Op., ECF No. 90). In that opinion, the Court reviewed Defendants' challenges to the following counts in Plaintiff Chinyere Uzoukwu's Amended Complaint: hostile work environment based on ethnicity in violation of 42 U.S.C. § 1981 by Calvin Smith, the former director of the department in which Uzoukwu worked (Count I); retaliation in violation of 42 U.S.C. § 1981 by Smith (Count II); retaliation in violation of 42 U.S.C. § 1981 by Paul DesJardin, Uzoukwu's supervisor, and Imelda Roberts, COG's Director of Human Resources (Count VI); hostile work environment and disparate treatment based on ethnicity in violation of 42 U.S.C. § 1981 by COG itself (Count IX); and retaliation in violation of 42 U.S.C. § 1981 by COG (Count X).[1]

---

[1] In an Order dated January 22, 2014, ECF No. 61, Judge Wilkins, who previously presided over this case, dismissed all of the other counts in the Amended Complaint that remained following Uzoukwu's revisions to the original Complaint: tortious interference with economic advantage

The Court found that Uzoukwu had proffered sufficient evidence to present her disparate treatment claim against COG (part of Count IX) and retaliation claims (Counts II, VI, and X) to a jury, but that she had not sufficiently made out a claim for hostile work environment (the other part of Count IX).  See Mem. Op., ECF 90.  Defendants now move for clarification and reconsideration of that ruling.  They seek clarification on which claims survive against which individual defendants, and they urge the Court to conclude that Uzoukwu has failed to make out her disparate treatment claim and her retaliation claims against COG and individual Defendants Smith and Roberts.[2]

The Court will grant in part and deny in part the motion for reconsideration.  It concludes that Uzoukwu has presented sufficient evidence for her retaliation claim against COG to survive summary judgment, but that she has not made out a disparate treatment claim against COG or retaliation claims against Smith or Roberts in their individual capacities.

## I. Retaliation Claim Against Smith

Uzoukwu alleges that she was terminated in retaliation for having complained of discrimination.  See Pl.'s Opp'n Defs.' Mot. Clarification & Recons. 4 (noting that "each of the remaining counts" in her Amended Complaint identified "terminat[ion]" and "loss of employment" as the discriminatory and retaliatory adverse action she suffered (quoting Am.

---

by Smith (Count III); tortious interference by DesJardin and Roberts (Count VII); and negligent retention and supervision by COG (Count XVI).

[2] Defendants do not appear to challenge the Court's denial of summary judgment as to Uzoukwu's retaliation claim against DesJardin beyond asserting that, because DesJardin had a hand in hiring Uzoukwu, the "same actor" inference "requires [her] to present further evidence" to defeat their motion for summary judgment.  Defs.' Mot. Clarification & Recons. 5.  As discussed below, see note 5, infra, the Court is not persuaded by that argument.  The Court will therefore deny Defendants' motion for reconsideration as to this claim, to the extent they so move.

Compl., ECF No. 52 ¶¶ 109, 136, 158, 163)). In their motion for reconsideration, Defendants emphasize that Smith was no longer employed at COG at the time of the termination; he retired in January 2008, and Uzoukwu was terminated in March 2008. They also note that Uzoukwu has not alleged that Smith participated in the termination decision.

While Title VII of the Civil Rights Act of 1964, the usual vehicle for federal employment-discrimination claims, "does not impose individual liability on supervisory employees," Gary v. Long, 59 F.3d 1391, 1400 (D.C. Cir. 1995), the statute under which Uzoukwu brings her claims, 42 U.S.C. § 1981, can impose such liability "for personal involvement in discriminatory activity" that violates that section, Brown v. Children's Nat'l Med. Ctr., 773 F. Supp. 2d 125, 136 (D.D.C. 2011) (quoting Zaidi v. Amerada Hess Corp., 723 F. Supp. 2d 506, 516–17 (E.D.N.Y. 2010)). The D.C. Circuit has not articulated a test for individual liability under § 1981, but the Court is persuaded by the Seventh Circuit's formulation and application of the standard in Smith v. Bray, 681 F.3d 888 (7th Cir. 2012), a case with a number of factual parallels to this one.

Smith involved a claim of retaliation in violation of § 1981 by a human resources manager. Because the plaintiff brought a claim of individual liability, the court concluded that he had to show that the manager (1) "participated in the decision to fire him," and (2) "was motivated by a desire to retaliate against him for his complaints of . . . discrimination." Id. at 892. The Second Circuit has similarly emphasized that "[p]ersonal liability under section 1981 must be predicated on the actor's personal involvement" in the claimed violation, Patterson v. Cnty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000)) (internal quotation mark omitted); that the retaliation must have been "intentional," id. at 226; and that there must have been "some

affirmative link to causally connect the actor with the [retaliatory] action," id. at 229.

In Smith, the Court held that the plaintiff failed to establish individual liability because, although he demonstrated that the human resources manager participated in the decision to terminate his employment, he failed to show that she was personally motivated by retaliatory animus. The human resources manager had received complaints of harassment from the plaintiff without investigating them, had occasionally refused to speak with the plaintiff, had met with the deciding official in the lead-up to the plaintiff's termination, and had prepared the plaintiff's termination report. See Smith, 681 F.3d at 893, 895, 900. Against those facts, the Court determined that her participation in the termination decision was sufficiently established, but that, without more evidence that her "*personal* motives included retaliation," the plaintiff had failed to demonstrate retaliatory animus. Id. at 901.

Here, the reverse circumstances compel the conclusion that Uzoukwu has failed to establish individual liability as to Smith. While she alleges facts that might support a finding of retaliatory animus,[3] she does not dispute that Smith left the organization before she was terminated, nor does she allege that he participated in the decision after leaving. Under the Seventh and Second Circuits' formulations, then, Uzoukwu has not sufficiently predicated liability as to Smith on his "personal involvement" in the alleged adverse action. Patterson, 375 F.3d at 229; see also Smith, 681 F.3d at 892. Therefore, the Court will grant Defendants' motion for reconsideration as to this claim, as it cannot survive summary judgment.

**II.     Retaliation Claim Against Roberts**

Uzoukwu's claim against Roberts, COG's human resources director, fails for the same

---

[3] See section III, infra.

reasons as did the claim in Smith.  Uzoukwu has demonstrated Roberts's involvement in the termination decision, but she has not established personal retaliatory animus.  She points to deposition testimony of David Robertson, COG's Executive Director and the deciding official for Uzoukwu's termination.  Robertson testified that, "working with Mr. DesJardin and Imelda Roberts," he decided to eliminate Uzoukwu's position.  Pl.'s Opp'n Mot. Summ. J., Ex. 15, at 31.  In addition, he described having sought Roberts's "perspective or recommendations," id., and having solicited her input on the termination memo, id. at 33.  As in Smith, where the human resources manager had consulted with the deciding official prior to the termination and helped to prepare the termination document, this evidence is sufficient to establish Roberts's involvement in the termination process.

But also like the plaintiff in Smith, Uzoukwu has not put forward evidence sufficient to demonstrate retaliatory motivation as to Roberts.  Although the plaintiff in Smith showed that he had complained of discriminatory treatment by his supervisor and that the human resources manager was aware of those complaints, he failed to show that those complaints motivated her decision to recommend his termination.  Rather, he demonstrated only that she had failed to investigate his complaints against the supervisor and other employees, that she had refused to speak with him on occasion, and that his termination came soon after his complaints.  See 681 F.3d at 901.  Without more, these facts were insufficient "to present a genuine issue of fact as to whether [the manager's] *personal* motives included retaliation."  Id.  The same is true here. Uzoukwu has alleged only that she complained to Roberts of her low performance evaluation and reduction of responsibilities, Pl.'s Opp'n Mot. Summ. J. 6; id. Ex. 4, at 87–90; id. Ex. 9; that Roberts was aware of her complaints made directly to Smith and DesJardin, see id. Ex. 11; that Roberts took no action following her complaint about a joke she overheard a former employee

making that she "ha[d] the right name, but . . . the wrong color," see id. Ex. 4, at 135–40; and that Roberts did not handle another complaint about a fellow employee as effectively as she could have, see id. Ex. 4, at 182–84. Even if true, these facts suggest no more than that Roberts was aware of the difficulties surrounding Uzoukwu's employment at COG and that at times, she failed to act on Uzoukwu's complaints. They do not support a reasonable inference that Roberts harbored a retaliatory bias. Therefore, Uzoukwu has failed to make out a claim of retaliation against Roberts, and the Court will grant Defendants' motion for reconsideration as to this claim.

### III.  Retaliation Claim Against COG

Unlike her claims against Smith and Roberts, Uzoukwu's retaliation claim against COG is sufficiently supported to survive summary judgment. She has testified that she made several complaints of discriminatory treatment, see id. Ex. 4, at 58, 88–89, 98–99, 109, 138–40,[4] and there is no dispute that she was terminated. So the protected activity and adverse employment action elements of Uzoukwu's claim of retaliation are satisfied for purposes of summary judgment. See Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 578 (D.C. Cir. 2013). At issue on this motion for reconsideration is the causation element; that is, whether Uzoukwu has proffered sufficient evidence to establish that she was terminated because of retaliatory animus resulting from her complaints of discrimination, rather than for the ostensibly legitimate reason proffered by Defendants—that the economic downturn at the time forced it to cut staff.

As discussed in the Court's previous opinion, the "cat's paw" theory of liability allows a plaintiff to hold an employer liable without having to show retaliatory animus on the part of the

---

[4] Although Defendants challenge Uzoukwu's assertion that she complained about the joke she overheard, see Defs.' Mot. Supp. Clarification & Recons. 10–11, that is a question of fact appropriate for resolution at trial rather than at the summary judgment stage.

deciding official, so long as she can show that the deciding official was influenced either by another official who harbored such animus or by an action by that official that proximately caused the termination.  See Uzoukwu, 2015 WL 5541578, at *10 (citing Staub v. Proctor Hosp., 562 U.S. 411, 419 (2011)).  Here, Uzoukwu has presented evidence from which a reasonable jury could conclude that DesJardin, exhibiting his own retaliatory animus and being influenced by that of Smith, in turn influenced the termination decision by consulting with Robertson, the deciding official.  Uzoukwu offers the following facts in support of DesJardin's retaliatory animus, Smith's influence on his views, and DesJardin's participation in her termination:

- DesJardin, along with Smith, reduced her work responsibilities, reassigning some of them to white employees, after she complained of his treatment of another African-American employee, Gary Givens, in May 2006.  Pl.'s Opp'n Mot. Summ. J. 3–4; id. Ex. 4, at 68–69, 80, 89–90.

- DesJardin, along with Smith, assessed her performance at a low level in an appraisal in August 2006.  See Pl.'s Opp'n Mot. Summ. J. 4–5; id. Ex. 4, at 81–86; id. Ex. 5.

- After she complained that the initial appraisal was discriminatory, DesJardin, along with Smith, changed her appraisal rating to a higher score and insisted that the lower rating had never been given.  See Pl.'s Opp'n Mot. Summ. J. 7; id. Ex. 1, at 20–21; id. Ex. 2, at 25–26; id. Ex. 3, at 26; id. Ex. 7; id. Ex. 8.

- In a memo to Uzoukwu, DesJardin, copying Smith and Roberts, characterized Uzoukwu's complaint that the appraisal was discriminatory as "disturbing," Pl.'s Opp'n Mot. Summ. J., Ex. 11, at 1, adding that he found her "pattern of making judgments against COG management and staff to be troubling and unacceptable," id. at 2.

- In another memo to Uzoukwu, Smith, copying DesJardin and Roberts, expressed his "total disagreement" with her email complaint that a low performance rating he and DesJardin had given her was discriminatory, characterizing her complaint as "baseless and unwarranted," lacking "collegiality," "the most disturbing comment [he] ha[d] ever received in [his] 20 plus years of senior management," and having a more "far reaching implication than a performance evaluation" in that "it seeks to undermine both the effectiveness of how [the department] is managed and the vision of the department moving forward."  Pl.'s Opp'n Mot. Summ. J., Ex. 13, at 1–2.

- In the same memo on which DesJardin was copied, Smith recommended that

7

      Uzoukwu receive counseling through COG's Employee Assistance Program ("EAP") "at [her] earliest opportunity" due to her "lack of confidence," "unprofessional tone and baseless accusations toward management." Id. at 2.

- DesJardin took no action following Uzoukwu's complaint about the joke she overheard a coworker making about her having the "right name" but the "wrong color." See Pl.'s Opp'n Mot. Summ. J. 12; id. Ex. 4, at 138–40.

- In a memo following up on an earlier mandatory referral of Uzoukwu to EAP counseling, DesJardin, along with Smith, notified Uzoukwu that she was required to consent to disclosure of her diagnosis and treatment information in order to fully cooperate with the referral. See id. Ex. 20, at 1.

- DesJardin consulted with Robertson, the deciding official, leading up to Uzoukwu's termination, and aided Robertson in deciding to eliminate Uzoukwu's position. See id. Ex. 15, at 31–32.

A reasonable jury could conclude from these facts that DesJardin and Smith each independently harbored retaliatory animus toward Uzoukwu; that, through their close collaboration with respect to Uzoukwu's complaints and disciplinary actions, DesJardin's views toward Uzoukwu were informed and influenced by Smith—who was DesJardin's direct supervisor, see id. Ex. 2, at 12; and that DesJardin, in turn, influenced Robertson's decision to terminate Uzoukwu through his participation in that decision. Because Smith was DesJardin's direct supervisor, a jury could conclude that Smith's approach to Uzoukwu shaped their communications with her and that, as a result, the memo that Smith authored and on which DesJardin was copied—in which Smith criticized her for complaining about her performance appraisal, see id. Ex. 13—influenced DesJardin's perspective.

In addition, Uzoukwu offers further evidence of DesJardin's retaliatory animus in the form of another memo addressed to her from Smith. This memo, on which no one else was copied, informed Uzoukwu of her mandatory referral to the EAP. In it, Smith explained that Uzoukwu was required to attend counseling sessions for, among other reasons, "inappropriate emails," which, a jury could conclude, referred to her emailed complaints of discrimination. Id.

8

Ex. 17, at 1. Although DesJardin was not copied on this memo, he testified in his deposition that he consulted with Smith and Roberts on the decision to issue the referral, that the referral was made on Roberts's recommendation, and that he concurred with the decision. See id. Ex. 2, at 62. In addition, when asked if he had been involved in drafting the memo notifying Uzoukwu of the mandatory referral, DesJardin answered, "I may have been, yes." Id. at 64. This testimony evinces not only an awareness of the contents of Smith's memo to Uzoukwu, but a hand in formulating them. A reasonable jury could conclude from this evidence that DesJardin agreed with the decision to refer Uzoukwu to counseling in part because of her email complaints of discrimination.[5]

A reasonable jury could also conclude that Uzoukwu has presented sufficient evidence to rebut Defendants' assertion that COG eliminated her position for legitimate reasons stemming from its desire to reduce staffing levels due to the economic downturn. Defendants have presented evidence that COG faced economic challenges, that it terminated Uzoukwu by way of eliminating her position altogether, and that it has not replaced her. Uzoukwu responds with evidence showing that, despite their purported need to reduce overhead, Defendants put forth no reduction-in-force plan for the organization, and, although they reduced nine positions

---

[5] Defendants also contend that Uzoukwu's retaliation claim is undermined by the fact that the allegedly retaliatory actors—DesJardin and Smith—were the same people who chose to hire her in the first place. See Defs.' Mot. Supp. Clarification & Recons. 4–5. But Defendants acknowledge that this "same actor inference" "is just that, an inference" that "cannot immunize" against liability. Id. at 5 (quoting Czekalski v. Peters, 475 F.3d 360, 369 (D.C. Cir. 2007)). In Czekalski, the D.C. Circuit explained that, while the same actor inference "is probative evidence against a claim" that the hiring official "harbored a general animus" against those of the plaintiff's protected classification, it "cannot immunize" "from liability for *subsequent* discrimination, nor is it alone sufficient to keep [a] case from a jury." 475 F.3d at 368–69 (emphasis added). Here, Uzoukwu alleges discrimination and retaliation subsequent to her hiring; she does not rely on a contention that Smith and DesJardin harbored general animus toward African-Americans or people of her ethnicity.

throughout the organization in 2008, they added a position to Uzoukwu's department as part of the reorganization. See Pl.'s Opp'n Mot. Summ. J., Ex. 15, at 47 (deposition testimony of Robertson that the statement that Uzoukwu's department "went from 17 and a half full-time equivalent positions to 18 and a half full-time equivalent positions" in the reorganization was "correct").[6] Weighing the competing evidence, a reasonable jury could conclude that Defendants' proffered reasons for the termination were pretext for retaliation. Accordingly, the Court will deny Defendants' motion for reconsideration as to this claim.

### IV.  Disparate Treatment Claim Against COG

Although the cat's paw theory of liability likewise applies in the discrimination context, see Walker v. Johnson, 798 F.3d 1085, 1095–96 (D.C. Cir. 2015) (applying the theory to discrimination and retaliation claims arising from a termination decision), upon reconsideration, the Court concludes that Uzoukwu has not proffered sufficient evidence to support her disparate treatment claim. A disparate treatment claim requires demonstrating that the plaintiff "suffered an adverse employment action"—here, termination— "because of" a protected status—here, her ethnicity. Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). In order to show that an adverse employment action was taken "because of" a protected status, the plaintiff must present evidence of discriminatory intent; "[p]roof of discriminatory motive is critical." Davis v. District of Columbia, 949 F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting Anderson v. Zubieta, 180 F.3d 329, 338 (D.C. Cir. 1999)); see also id. at 7–8. Unlike with respect to the evidence offered to support her retaliation claim, a reasonable jury could not conclude from the evidence

---

[6] Uzoukwu characterizes this as an addition of two positions because COG began by eliminating Uzoukwu's position, and then it added "two full-time positions" to her department. See Pl.'s Opp'n Mot. Summ. J. 34–35.

supporting this claim that discriminatory animus informed the termination decision such that it was made intentionally "because of" Uzoukwu's ethnicity.

Uzoukwu contends that DesJardin and Smith reassigned her workload to white coworkers, that they failed to act on her complaint about overhearing the "right name, wrong color" joke, and that Smith admonished that she lacked "white privilege" and therefore had to "be careful because [she was] black," and "understand [her] position because [she was] black," Pl.'s Opp'n Mot. Summ. J. 11 (quoting id. Ex. 4, at 116).  Given that Smith did not participate in the termination decision, his comments hold significance only to the extent that the evidence supports an inference that they influenced those involved in the decision—DesJardin and Robertson—or that they evinced COG's "general atmosphere of discrimination." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55 (1st Cir. 2000).  Because there is no evidence in the record that either DesJardin or Robertson was aware of Smith's comments concerning "white privilege," these comments could be probative only in the latter sense.

While "statements made by 'one who neither makes nor influences [a] challenged personnel decision are [typically] not probative in an employment discrimination case,'" id. (first alteration in original) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990)), "evidence of a company's general atmosphere of discrimination 'may be considered *along with any other evidence bearing on motive* in deciding whether a . . . plaintiff has met her burden of showing that the defendants' reasons are pretexts,'" id. (quoting Sweeney v. Bd. of Trustees, 604 F.2d 106, 113 (1st Cir. 1979)). And while "comments . . . concerning the company's treatment" of employees who share a plaintiff's protected classification "are not proof of discrimination[,] . . . they 'add color to the decision-making process . . . and the reasons given for'" the personnel action at issue. Id. at 56 (quoting Sweeney, 604 F.2d at 113). Smith's

comments concerning "white privilege," then, may be considered as probative of COG's "general atmosphere," but they are not, by themselves, sufficient to substantiate Uzoukwu's disparate treatment claim.

The meaning underlying these comments is far from unambiguous. As the Court suggested in its previous opinion, a jury could infer that "Smith, as an African-American, might well have intended simply to begin a frank conversation about the challenges that non-white employees face in the workplace." Uzoukwu, 2015 WL 5541578, at *7. Or, a jury could infer that Smith was articulating the view, from his high-ranking position within the organization, that COG is generally inhospitable to African-American employees—that the organization is one in which such employees have to "be careful" because of their race or ethnicity. But even taking these comments in the light most favorable to Uzoukwu, they "are not proof of discrimination," but rather may be considered only alongside "*other evidence bearing on motive*." Santiago-Ramos, 217 F.3d at 55. And here, the only other evidence of ethnicity discrimination proffered is that DesJardin and Smith reassigned some of Uzoukwu's workload to white employees and that they failed to take action in response to her complaint about a joke she found disparaging. Without more, this evidence is insufficient to substantiate a claim that her termination was the product of discriminatory intent on the part of DesJardin and Robertson. The Court will therefore grant Defendants' motion for reconsideration as to this claim.

### V. Conclusion

For the foregoing reasons, Defendants' Motion for Clarification and Reconsideration will be granted in part and denied in part. An Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: February 8, 2016